Alloway *v.* Nashville.

## ALLOWAY *v.* NASHVILLE.

*(Nashville.* February 11, 1890.)

1. EMINENT DOMAIN. *What constitutes "just compensation" for land taken for public use.*

The "just compensation" required by our Constitution and laws to be made for lands taken from the owner for public use consists of the fair market value, in cash, of the lands actually taken, at the date of their appropriation, estimated as if the owner were willing to sell and the taker desired to purchase that particular quantity of land at that place and in that form, together with such incidental damages as result, naturally and proximately, to other lands of same land-owner at the date and by reason of such taking, with interest from the date of the actual appropriation of the lands.

Constitution construed: Art. I., Sec. 21.

Code cited: ? 1562 (M. & V.) ; ? 1338 (T. & S.).

Cases cited and approved: Woodfolk *v.* Railroad, 2 Swan, 437; Railroad *v.* Love, 3 Head, 63; Railroad *v.* Adams, 3 Head, 596; Memphis *v.* Bolton, 9 Heis., 508.

2. SAME. *Same. How value of land actually taken is estimated.*

The inquiry as to fair market value, in cash, of the land actually taken must be restricted, both in the evidence and in the Court's charge to the jury, to the *general* value of the land, estimated upon consideration *in a single view of all its elements of value.* Estimates of value based upon particular qualities or capabilities of the land—such as its value as a stone quarry, or its suitableness for a reservoir site—to the exclusion of all other elements of value, are inadmissible. Such elements of value must not be priced separately, but the land, with all its qualities and capabilities, must be taken and valued as one whole.

Cases cited and approved: Woodfolk *v.* Railroad, 2 Swan, 437; 137 Mass., 163; 33 Pa. St., 57; 98 U. S., 405; 27 Minn., 291.

Case cited and disapproved: 3 Lawyers' Rep. (annotated), 83.

3. SAME. *Same. How incidental damages are estimated.*

Incidental damages, resulting to land-owner from the taking of a portion of his lands for public use, must be estimated upon the assumption that the lands taken will be applied, within a reasonable time and in a proper manner, to the use for which they were condemned, and that due care and proper skill will be exercised in the manner of their use.

4. SAME. *Same. Damages resulting from negligent use of property are not incidental.*

Damages resulting to land-owner's other property from the wrongful or negligent use, by the taker, of the property appropriated to public use are not incidental damages, nor recoverable as such. The land-owner must recover them by original suit brought for that purpose.

5. SAME. *Same. Illustration of distinction between incidental damages and loss caused by negligence of taker.*

Depreciation in the value of the remaining land caused by the reasonable apprehension of danger, excited by erection of a reservoir upon the part taken, on account of its liability to inherent defects and unavoidable accidents, notwithstanding its skillful construction and careful operation, is properly incidental damages. But like depreciation in value, resulting from apprehension of danger, excited by negligence in the construction or operation of the reservoir, is not incidental damage.

6. SAME. *Practice in condemnation proceedings. Opening and closing case.*

In proceedings instituted under our statutes for condemnation of private property for public use, the burden of proof being upon the party seeking the condemnation to show the necessity therefor, he is entitled to open and close the case.

Code construed: §§ 1549–1566 (M. & V.); §§ 1325–1342 (T. & S.).

7. SAME. *Same. Same.*

And the practice is the same in this regard where the land-owner alone appeals from the appraisement of damages by the jury of inquest and concedes the applicant's right to condemn the land upon payment of adequate compensation.

Alloway *v.* Nashville.

8. SAME. *Interest allowed upon amount of damages assessed.*

Interest will be allowed upon the amounts assessed as the value of the land taken and as incidental damages from the date of the taking and appropriation of the land.

Case cited and approved: Railroad *v.* Burnett's Executor, 11 Lea, 526.

9. SAME. *Same. Correction of error by allowance of interest.*

Where it appears that interest has not been allowed in the Court below when it should have been, this Court may correct the judgment in that particular without reversing and remanding the case.

10. TENDER. *Of less than amount due, ineffectual.*

Tender by a debtor to his creditor of a less sum than the amount actually due is wholly ineffectual to stop the running of interest upon the debt or any part of it.

---

FROM DAVIDSON.

---

Appeal in error from Circuit Court of Davidson County. W. K. McALISTER, J.

DEMOSS & MALONE, EAST & FOGG, and J. M. ANDERSON for Alloway.

VERTREES & VERTREES and LYTTON TAYLOR for Nashville.

CALDWELL, J. This proceeding was instituted by the city of Nashville in August, 1887, to condemn and appropriate what is known as "Kirkpatrick's

Hill" for reservoir purposes. The jury of view assessed the damages at $9,686. Alloway and wife, the owners of the property, appealed from that report, and obtained a trial in the Circuit Court, where verdict and judgment were rendered for $12,532. From that judgment Alloway and wife have prosecuted an appeal in error to this Court.

The assignment of errors presents several important and interesting questions of law and practice, which it is necessary to consider somewhat in detail in order to reach an intelligent decision of the case.

*First.*—It is objected and assigned as error that the owners of the land were not permitted to show its particular value *as a reservoir site;* and, again, that the trial Judge, in his charge, instructed the jury that, in determining the value of the property taken, they could not single out from the elements of general value *its value for one special purpose.*

These two objections raise the same legal question, and will, for that reason, be considered together.

The "just compensation" required by our Constitution (Art. I., Sec. 21) is the fair cash value of the land taken for public use, estimated as if the owner were willing to sell, and the corporation desired to buy that particular quantity, at that place, and in that form. *Woodfolk* v. *Nashville and Chattanooga Railroad Company*, 2 Swan, 437; 3 Head, 67 and 600.; 9 Heis., 509. This

33—4 P

value means the market value.    Lewis on Eminent
Domain, Sec. 478; 98 U. S., 408; Cooley Const.
Lim. (5th Ed.),  699.

It includes every element of usefulness and ad-
vantage in the property.    If it be useful for ag-
riculture or for residence purposes, if it has adapt-
ability for a reservoir site  or for the operation of
machinery, if it contains a quarry of stone or a
mine of precious metals, if it possesses advantage
of location or availability for any useful purpose
whatever, all these belong to the owner, and are
to be considered in estimating its value.    It mat-
ters not that the owner uses the property for the
least valuable of all the ends to which it is
adapted, or that he puts it. to no profitable use
at all.    All its capabilities are his, and must be
taken into the estimate.

This does not mean that all the capabilities are
to be priced separately and the aggregate put
down as the true value, for they do not exist in-
dependently of each other, and cannot all be real-
ized at the same time; nor will it do to restrict
the estimate to any one of them, because in one
view that would exclude the other elements alto-
gether, and, in another view, it would tend to
make the degree of benefit to the party appropri-
ating and condemning for a particular purpose the
real measure of value, which is never allowable.

The field of investigation in the case before us
was a very broad one.    The location and elevation
of the property were given; its surface, area, and

present use were described; the existence and character of stone within its compass, and the fact that the best of the stone was used in the construction of the walls of the reservoir were disclosed; the city's engineer said that the hill had some value for residence purposes, but was valuable "mostly for a reservoir site," and this view was confirmed by Mr. John Overton, who said that there were only "one or two more good places for a reservoir" in reach of the city.

No witness was allowed to put a price upon any single element of usefulness or advantage, but all the foregoing facts and circumstances were stated in detail by one witness and another, and from them all the witnesses gave their opinions as to the market value of the property. The question calling for such opinions were generally in this form:

"Considering the property sought to be condemned in the form it was taken, and as it was taken, and having regard to the entire property, and the uses to which it was put, and also the uses to which it was adapted, and assuming that Mr. Alloway wanted to sell, but was not obliged to sell this piece or parcel of land, and the city wanted to buy it, but was not obliged to have it, what was the cash market value of the same in August, 1887, and what would be just compensation to Mr. Alloway, and what damages should be allowed to him?"

Some of the witnesses, especially those put on the stand by the owners, answered short questions

as to their acquaintance with the property and its market value.

With respect to the mode of ascertaining the value of the land *taken*, the Circuit Judge instructed the jury in these words:

"In estimating its value, all the capabilities of the property, and all the uses to which it may be applied, are to be considered, and not merely the condition it is in at the time, and the use to which it is then applied by the owner. It is not a question of the value of the property to the owner. Nor can the value be enhanced by his unwillingness to sell. On the other hand, the damages cannot be measured by the value of the property to the party condemning it, nor by its need of the particular property. The city is entitled to have the land at its fair, market, cash value, unaffected by the fact that it needs it or desires it. If it were otherwise, the value of land would not be measured by what it is actually worth in the market, but by the extent to which it might be necessary for public use. * * * So, when an appropriation of land is made for a city reservoir, the question is not what the land is worth to the city for the especial purpose, for that would be to measure the value by the immediate necessities of the public rather than the actual worth of the land. In determining the market cash value, you cannot single out from the elements of general value the value for an especial purpose; but you are to consider all the con-

stituent elements that make up the market value—
its availability, adaptability, and capability for differ-
ent uses and purposes. In determining the market
cash value, every thing which enhanced or depre-
ciated its worth should be taken into consideration.
If the existence of a rock quarry under the sur-
face of the hill augmented or entered into the
market value of the land, that fact should be con-
sidered; but the jury could make no separate
allowance for the rock, for that would necessitate
an inquiry into the cost of excavating and raising
it. The cash market value of the land, with the
rock in it, would be the proper consideration."

To a great extent—and entirely, so far as the
cases are alike—this charge is sustained by the
opinion of this Court in *Woodfolk* v. *Nashville and
Chattanooga Railroad Company*, 2 Swan, 437, and
in that and all other respects it is in accord with
the doctrine laid down in Lewis on Eminent
Domain, Sections 478, 479, and 486; 3 Sutherland
on Damages, Sections 441, 442; Mills on Eminent
Domain (2d Ed.), Section 168; *Moulton* v. *New-
buryport Water Company*, 137 Mass., 163; *Searle* v.
*Lackawanna Railroad Company*, 33 Pa. St., 57;
and in other cases not necessary to be cited.

Thus, as we think, every legitimate question on
this branch of the case was developed and properly
submitted for the consideration of the jury. The
action of the trial Judge was right, both in the
rejection of evidence of the *amount* of value for a
reservoir site and in the instruction that the jury

could not single out and estimate the value for a special purpose.

We fully agree with the learned counsel of Alloway and wife that "the particular purpose for which a piece of property is most applicable" must be considered in estimating the value of such property. That was done in this case. It was distinctly proven that "Kirkpatrick's Hill" was applicable "mostly for a reservoir site," and the jury were told to consider that and every other element of value. That they did so cannot be doubted for a moment, in the light of the whole proof and the amount of the verdict returned.

Our holding is that, while adaptability for a reservoir site must be considered, the value for such a purpose *exclusively* cannot be shown in proof and made the sole basis of a recovery, especially when the property possesses other capabilities, as in this case.

There is a lack of harmony in the decisions on this subject, some of them permitting the inquiry as to the value of the property for *one* special use, and others holding, as we do, that the market value in view of *all* available uses is the measure of compensation.

It is not desirable to review all the cases in this opinion, but some of them will be mentioned.

The latest one in the former line is that of *San Diego Land Co.* v. *Neale,* decided by the Supreme Court of California in 1889, and published in 3 Lawyers' Reports, Annotated, p. 83. In that

case it was distinctly held, that it was competent
to prove the value of land for *a reservoir site,* and
to make that value the measure of damages, in-
dependent of any other consideration or element
of value; and that, too, when the land sought to
be condemned was in fact not the real site of the
reservoir, but only necessary to contain backwater
from the dam below.    To reach that conclusion
two former decisions by the same Court, holding
a contrary rule, were overruled, and other authori-
ties, cited in the opinion, were followed.

In a case of the other line this language is
used: "But where a condemnation is sought for
the purposes of a railroad, to single out from the
elements of general value the value for the special
purposes of such railroad, is, in effect, to put to
a jury the question, What is the land worth to the
particular railroad company? rather than, What is
it worth in general? The practical result would
be to make the company's necessity the land-
owner's opportunity to get more than the real
value of his land." *Stinson* v. *C., St. P. & M.
R. R. Co.,* 27 Minn., 291.

The case of *Boom Company* v. *Patterson,* 98 U.
S., is cited by the California Court, and is relied
on as sound authority by counsel on both sides
of this controversy.    Patterson owned one island
and parts of two others in the Mississippi River,
which the boom company condemned.    The value
was first appraised by commissioners, and afterward
by a jury in the Circuit Court of the United

States. When the case reached the Supreme Court, Mr. Justice Fields, delivering the opinion, said:

"The jury found a general verdict, assessing the value of the land at $9,358.33, but accompanied it with a special verdict assessing its value, aside from any consideration of its value for boom purposes, at $300, and, in view of its adaptability for those purposes, a further and additional value of $9,058.33. * * * In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, What is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted—that is to say, what is it worth from its availability for valuable uses? Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities and conveniences of life. Its capability of being made thus available gives it a market value which can be readily estimated.

"So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is, perhaps, impossible to formulate a rule to govern its appraisement in all cases. Exceptional cir-

cumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future. The position of the three islands in the Mississippi, fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, added largely to the value of the land. The boom company would greatly prefer them to more valuable agricultural lands, or to lands situated elsewhere on the river, as, by utilizing them in the manner proposed, they would save heavy expenditures of money in constructing a boom of equal capacity. Their adaptability for boom purposes was a circumstance, therefore, which the owner had a right to insist upon as an element in estimating the value of his lands." 98 U. S., 405, 407, 408.

This lengthy extract presents the rule for compensation, and its application to the facts of the case. Both, as we understand them, are in harmony with and support the views expressed in this opinion. There the adaptability of the islands for boom purposes was held to be an element of value to be considered by the jury; here it is decided that the adaptability of the hill for purposes of a reservoir is an element of value to be taken

into the estimate. There it was treated as an *element* only, to be considered in connection with other elements of value; so it is here. .In that case the contention of the condemning party was that the adaptability of the islands for boom purposes should not enter into the estimate at all. The Court said it should, in the words quoted.

No comment is made in the opinion on the fact that the jury in a special verdict assessed the value for boom purposes separately. That method is neither approved nor disapproved by intimation or otherwise. The general verdict, as reduced by the owner, on suggestion of the lower Court, was affirmed.

A late author, speaking on this subject, says: " The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation. Some of the cases hold that its value for a particular use may be proved, but the proper inquiry is, What is its market value, in .view of any use to which it may be applied, and of all the uses to which it is adapted? *   *   *   The conclusion from the authorities and reason of the matter seems to be that witnesses should not be allowed to give their opinions

as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted.  The condition of the property and all its surroundings may be shown, and its availability for any particular use.  If it has a peculiar adaptation for certain uses, this may be shown; and if such peculiar adaptation adds to its value, the owner is entitled to the benefit of it.  But when all the facts and circumstances have been shown, the question at last is, What is it worth in the market?" Lewis on Eminent Domain, Sec. 479.

*Second.*—By statute the owner is entitled to compensation for land actually appropriated, and, in addition, to incidental damages for injury, if any, to the residue of the tract.  Code (M. & V.) § 1562. Both were claimed in this case, but only the former was allowed by the jury.  As ground for incidental damages, the use, amount, and relative position of the residue, and the capacity (50,000,-000 of gallons) and dimensions of the reservoir were shown.  It was also proven that the walls of the reservoir were made of stone taken from the hill; that some of the stone excavated was good for such purposes and some of it was not, the yield altogether being largely more than was used in the walls.  Upon these and some other circumstances the witnesses expressed various opinions on the question of depreciation or no depreciation in the market value of the residue.

The general charge with respect to incidental

damages is not assailed, but error is assigned upon this paragraph: "Damages are to be assessed on the basis that the work will be constructed and operated in a skillful and proper manner. All damages resulting from the neglect in these respects, or from negligence in the use of the reservoir, may be recovered by appropriate suits when such damages occur."

The objection to this is: "Because a reasonable apprehension of danger would impair the value of the property in the vicinity, and when it had been shown that the walls were built from the stone taken from the site, and that most of the stone in the hill was of bad quality, this was ground to apprehend danger, and, besides, the present owner is entitled to the incidental damages."

It seems to be well settled that damages to the residue are to be estimated on the assumption that the part actually appropriated will be used in a proper and skillful manner. Mills on Eminent Domain, Sec. 220; Lewis on Eminent Domain, Sec. 482.

Clearly this must be so when the damages are appraised before the construction and operation are commenced. If it were otherwise, no appraisement could be made until after the work is completed, because it could not sooner be known how defective the work will be nor the amount of depreciation caused thereby. The rule should be the same when the construction is in progress and not completed. That is this case. When the trial

below occurred, the work on the reservoir had been going on a long while, and was approaching completion, but it could not be finished for several months to come. The city was under legal obligation to so construct its improvements as to do the least injury to the residue of the land, and the presumption that it would perform that duty faithfully should be indulged until the work was finished and the presumption rebutted.

Even though some defect should, through negligence, occur in the construction, it is fair to assume that it will be detected and cured before putting the reservoir to its ultimate use.

In like manner the law devolves upon the city the duty of operating the reservoir carefully and skillfully, and it would be unjust to assume in advance that it will not do so. A different rule would be impracticable, as well as unjust, for no one could tell the amount to be allowed for improper operation until the fact itself should be ascertained, and the consequences seen and weighed.

The owner is entitled to all his damages, those for the land taken and those to the residue, so soon as the condemnation is made. Neither he nor the condemning party can await future developments to enhance or diminish the amount of damages. These must be estimated on the assumption that the land appropriated will be properly and in a reasonable time put to the use for which it is condemned.

We by no means intend to decide that incidental

damages must be estimated upon the assumption that the construction and operation of the improvement will be absolutely safe, and that apprehension of danger therefrom may not be considered by the jury. Our meaning is that such damages cannot be enhanced by the supposition that the corporation appropriating the land will act negligently. The presumption is that it will act carefully. If it act otherwise, and injury result from its negligence, that affords an independent cause of action, and the liability so incurred forms no part of the incidental damages.

There may be reasonable apprehension of danger from inherent defects and unavoidable accidents, notwithstanding skillful construction and careful operation of the improvement. If so, such apprehension, so far as it depreciates the present market value of the land not taken, is an element of incidental damages, and should be considered by the jury in making up their verdict.

Such apprehension was not excluded from the consideration of the jury in this case. Only that resulting from the "neglect" or "negligence" of the city was so excluded. At this point it is well to note the fact that there was no proof that any of the inferior stone had been placed in the walls, or that any of the work had been unskillfully done.

*Third.*—Each side claimed the right to open and close the argument before the jury. The trial Judge decided in favor of the city, and that action is assigned as error.

Alloway *v.* Nashville.

This question has been decided in several of the States, some of them holding one way and some the other. The majority of the cases seem to give the opening and conclusion to the land-owner. Lewis on Eminent Domain, Sec. 426.

The conflict in the decisions is largely due, no doubt, to difference in local practice or statutory provision. In this State the proceeding is inaugurated by the party seeking to appropriate the land. It is done by a petition setting forth the land wanted, the object for which it is to be condemned, the name of the owner, and concluding with appropriate prayer. Notice is to be given the owner, after which a jury to inquire and assess the damages is summoned and sworn. Either party may appeal from the finding of this jury, and have a trial anew before a jury in the Circuit Court. Code (M. & V.), §§ 1549 to 1566, inclusive. Not only is the corporation seeking the condemnation required to take the first steps and bring the land-owner before the Court in the prescribed mode, but it must, of necessity, show that it is entitled to exercise the right of eminent domain, and that the particular land is necessary for its corporate use. In all this the petitioner is plaintiff, with the affirmative of its claim and the burden of proof upon it. The question of the amount of damages is then considered, and, generally, one side seeks to make it as small and the other as large as possible.

Starting out as plaintiff, with the *onus* upon it,

the petitioner should be allowed to open and close the case, even though the burden of proof may be shifted to the other party on some question arising in the progress of the trial. Concession by the owner of the petitioner's right to condemn and take the particular lands, and contesting the question of damages *only,* cannot change the rule; nor can the fact that the owner alone appealed from the appraisement by the jury of inquest, for on that appeal the trial is *de novo,* and the attitude of the parties is the same as before.

*Fourth.*—The jury allowed no interest. No instruction on that subject was given or requested; but after the verdict was returned, and before judgment was entered, Alloway and wife moved the Court to add interest. This the Court refused to do, and his action in that regard is now assigned as error.

The statute authorizing the condemnation of private property for public use, and prescribing the mode of proceeding, is silent on this subject, and the general statute (Code (M. & V.), § 2702) which enumerates instruments that bear interest as a matter of law does not embrace a case like that before us. Nevertheless, we have no hesitation in holding, upon general principles, that interest should have been allowed from the time of the appropriation of the property. From that time the original owner was deprived of the use and possession of the land taken. The liability of the city accrued at that date, though the amount

thereof is not determined finally until long thereafter. Damages are properly assessed with reference to the value of the land taken and the depreciation of the residue at the time of condemnation. The legal rights of both parties, so far as the damages are concerned, are fixed at that time; subsequent enhancement or diminution of the value, though ever so great, cannot be considered by the jury in estimating damages. Witnesses are examined as to the amount of damages at the time of appropriation, and not at the time of the trial. That method was properly adopted in this case. The city, especially, asked her witnesses the value of the property "in August, 1887."

In the case of *Railroad* v. *Burnett's Executors,* 11 Lea, 526, the jury of inquest, though reporting several years after the land was appropriated, failed to allow interest. The petitioner did not appeal and have a trial *de novo,* but excepted to the report because it did not include interest. The exception was overruled, and the petitioner prosecuted a writ of error. This Court allowed the interest. 11 Lea, 527.

A discussion of this subject is found in Section 499 of Lewis on Eminent Domain.

Refusal to add interest was error. In the language of one of the counsel for appellants, "if the party in whose favor there is verdict, is, as a matter of law, entitled to something additional, the Court may allow it." Inasmuch as the error can be readily corrected here, that will be done in-

34—4 P

stead of reversing and remanding. This Court will render the judgment that should have been rendered below.

The land was taken about August 10, 1887, hence judgment will be entered for the amount of the verdict with interest from that date.

*Fifth.*—On September 22, 1888, the city paid into Court, subject to the order of Alloway and wife, the sum of $10,327.51, that being the amount of damages returned by the jury of view with interest and costs added. Because of this tender, the city now insists that it can in no event be liable for interest on a larger sum than the difference between the verdict and the amount so paid into Court.

This contention, though plausible at first view, is not sustained by sound reason. A tender of part of a debt in satisfaction of the whole of it is no tender at all in law. The sum paid into Court in this case was more than $2,000 less than the amount due Alloway and wife, as has since been demonstrated by the verdict of the jury; hence they were under no obligation to receive it, and cannot have their claim for interest abated on account of their refusal to do so.

The other grounds of error assigned, so far as material, fall within principles already announced, and for that reason they will not be further mentioned.

Let the judgment be modified by adding interest, and affirmed with costs.