Thomas Hay, a Minor, by his Mother and Next Friend, Mrs. Minnie Hay, and Mrs. Minnie Hay, Individually, Petitioners,

*v.*

Memphis Light, Gas and Water Division et al., Respondents.

426 S.W.2d 182.

(*Jackson,* April Term, 1967.)

Opinion filed March 18, 1968.

GALLOWAY & CLINTON, and WILLIAM I. McLAIN, Memphis, for petitioners.

LEO BEARMAN, CHARLES C. CRABTREE, WILLIAM A. SANDS, FRANK B. GIANOTTI, JR., Memphis, for respondents.

MR. JUSTICE HUMPHREYS delivered the opinion of the Court.

Thomas Hay, a child nine years old, climbed upon a platform supporting three electrical transformers, the property of Memphis, to fly a kite, where he suffered severe electrical burns. The three transformers were fed by primary wires and a neutral wire carrying a total of 12,500 volts between the two primary wires and 7,200 volts between each primary and the neutral wire. In some way, either by arcing or by contact, or both, Thomas was drawn against the transformer and burned. For these injuries, and expenses, etc., Thomas and his mother sued Memphis alleging facts invoking the "playground doctrine" and charging Memphis with acts of gross negligence and carelessness said to have directly and proximately caused the injuries and damages as follows:

"That on January 26, 1964, and for a long time prior thereto, the defendants owned the vacant lot on the south side of Willowview Street between 4057 and 4069 Willowview Street in Memphis, Shelby County, Tennessee, and the uninsulated high voltage electric wires, transformers and other electrical equipment and supporting structure located and situated on said lot.

"That on or about January 26, 1964, the plaintiff, Thomas Hay, a minor then nine (9) years of age and his ten year old brother were playing on said vacant lot and on said structure supporting said uninsulated high voltage electric wires, transformers and other electrical equipment when said minor plaintiff, being unaware of the peril involved, inadvertently came in contact with or in close proximity to said uninsulated high voltage electric wires, transformers and other electrical equipment and thereby suffered serious, severe, painful and permanent personal injuries as will be hereinafter shown.

"That the defendants were guilty of the following acts of gross negligence and carelessness which directly and proximately caused said accident and the resulting injuries and damages sustained by said minor plaintiff, to-wit:

"1. They knew that children of tender years habitually played upon said vacant lot to the extent that said lot became known as a playground for children, but failed to exercise ordinary care to see that said premises were reasonably safe for that purpose, thereby permitting said children to be exposed to a known danger.

"2. They made and permitted said structure supporting said uninsulated high voltage electric wires, transformers and other electrical equipment to be easily accessible to the young children who frequently played upon said vacant lot although they knew, or in the exercise of reasonable and ordinary care should have known, that such children would be attracted to and indeed did play upon said structure supporting said uninsulated high voltage electric wires, transformers and other electrical equipment and, further, that because of their youth they would fail to discover and appreciate the danger inherent in the situation.

"3. They failed to erect a fence around, to post warnings, to insulate, or to otherwise guard said uninsulated high voltage electric wires, transformers and other electrical equipment and supporting structure despite the fact that the cost of such insulation and of erecting such a fence and posting warnings would have been small as compared to the likelihood and seriousness of injury to the young children playing on said vacant lot and supporting structure.

"4. They failed to guard against just such an accident as did occur in this case when they knew said vacant lot was being frequently used by young children as a playground and when they knew, or in the exercise of reasonable and ordinary care should have known, that such children would be attracted to and in fact did play upon said structure supporting said uninsulated high voltage electric wires, transformers and other electrical equipment thereby permitting said children to be exposed to a known danger and to an unreasonable risk of bodily injury which said children would fail to discover and appreciate because of their youth and inexperience."

Later, their declarations were amended to plead and rely upon the doctrine of res ipsa loquitur; and upon Ordinance sec. 918 of the Memphis Municipal Code requiring electric wires of dangerously high voltage to be insulated. Memphis first pleaded the general issue. Then, after motion, filed special pleas which, as amended, denied it failed to use reasonable and ordinary care in the construction, maintenance and operation of the equipment, so that the premises were absolutely safe for children playing thereon; denied knowledge that children of tender years played on the lot to the extent it had become a playground for children; claimed Thomas was a trespasser upon their property; that he and his mother were guilty of contributory negligence. By special plea Memphis alleged Ordinance sec. 918 had been repealed by Ordinance 752 (sec. 2), and defendants pleaded and relied on this ordinance *as a defense*. This ordinance purported to repeal sec. 918 and substitute therefor a new section, 915, providing that all poles, lines and conduits authorized by the chapter should be installed and main-

tained in accordance with applicable provisions of the National Electrical Safety Code "as it is now written or as it may be revised or amended in the future. * * *"

Memphis also pleaded specially that the transformer bank installation was constructed and maintained so as to make it virtually physically impossible for a child of tender years to climb said structure, and that it was under no obligation to fence in the area containing the electrical installation or to post any warnings. It denied it knew or with reasonable care could have known that children could climb upon the transformer bank so as to be in danger, and denied that children had climbed there before Thomas did. It alleged by another special plea that an intervening cause relieved it of liability, in that unknown persons had placed a trailer adjacent to the transformer bank so it not only trespassed on Memphis' property but was so located as to "enable children who might play in the area to negotiate the structure and ascend to any area of danger".

Summarizing, Memphis defended on the grounds (1) it had not been guilty of any negligence because it had constructed and maintained the transformer bank in the safest manner possible and so as not to be climbable by children; (2) that the lot was not a playground, and it had no knowledge of facts charging it with responsibility or duty to Thomas and his mother under the playground doctrine; (3) that Thomas was a trespasser, particularly when he climbed upon the transformer bank platform, and so could not recover as Memphis had not entrapped him or otherwise wilfully or purposefully or wantonly injured him; (4) that the construction and maintenance of the transformer bank was in accord with generally accepted principles and practices with respect to such

installations; (5) and that the construction and maintenance of the transformer installation conformed to City Ordinance 752, sec. 2, of the City of Memphis, providing for poles, lines and conduits to be installed and maintained according to the National Electrical Safety Code as written or as amended in the future.

At the conclusion of the proof, the trial judge advised counsel that he was withdrawing from the jury Memphis' proof with respect to compliance with the National Electrical Safety Code, but that Memphis could rely upon its defense the transformer bank had been properly constructed and maintained.

The trial judge also held the plaintiffs could not rely upon City Ordinance 918, requiring all electrical wires carrying dangerously high voltage to be insulated, as in his opinion it had been repealed by the later ordinance.

It should be mentioned here that Memphis did not produce and introduce as evidence a copy of the National Electrical Safety Code.

The jury, adopting plaintiffs' version of the facts, returned verdicts for Thomas Hay for $125,000.00, and for his mother for $25,000.00.

The Court of Appeals after a thorough consideration of the facts and law overruled Memphis' assignments of error that there was no material evidence to support the verdict of the jury, and that the trial judge erroneously refused to direct a jury. This portion of the Court of Appeals opinion with which we are in thorough agreement, is attached hereto as Appendix A. (Omitted in publication).

After dealing with and disposing of (and we think correctly) a number of other assignments of error, the Court of Appeals concluded by sustaining Memphis' assignments of error based on the trial judge's withdrawing from the jury the proof relative to the National Electrical Safety Code and Memphis' compliance therewith. The Appeals Court was of opinion Memphis' compliance with the minimum safety requirements of this Code was Memphis' principal defense, and that the evidence withdrawn should have been submitted to the jury. The Court remanded the cases for a new trial.

We granted certiorari solely with respect to this question. To consider, specifically, (1) whether the evidence was of such relevancy or materiality to the issues as to make its exclusion reversible error, having in mind in particular the provisions of the Harmless Error Statutes, T.C.A. secs. 27-116, 27-117; (2) whether in point of law Ordinance 752 was constitutional; and (3) if constitutional, whether the National Electrical Safety Code adopted thereby was properly in evidence under Memphis' special plea relying on compliance with its provisions as a defense.

We were satisfied from the record, and are still satisfied after argument, with the correctness of the Court of Appeals disposition of all of the other assignments of error in the case. But we are of opinion the Court erroneously reversed for the exclusion of this evidence.

Memphis' testimony with respect to the National Electrical Safety Code was developed by cross-examination of plaintiffs' witness, Johnny R. Chester, and by Memphis' witnesses, James Ray Morton and James H. Myer, all three of whom were licensed engineers. The sum and

substance of their testimony was that the National Electrical Safety Code was a rule book of minimum safety requirements developed by representative groups of electrical engineers from across the United States, designed to promote safety in the transmission of electricity, under the circumstances where applicable. That the transformer bank had been constructed in accordance with applicable provisions of the Code. But, the only two provisions of the Code referred to as applicable were, that the platform on which the transformers were to sit should be ten feet above ground, and the high voltage primary wires feeding the transformers should be fifteen feet above ground. Memphis' witnesses testified that the transformer bank exceeded these minimums; the transformer platform being 12.98 feet above ground, and the point where the uninsulated high voltage wires entered the transformer being 12.98 feet plus the height of the transformer, forty-six inches, totalling approximately sixteen feet.

However, according to the testimony of these witnesses the rules regulating the height of the platform and the uninsulated transmission lines were designed solely to protect a person on the ground, and had no applicability to anyone on the transformer platform.

It was also developed through one of these witnesses that the available space to stand or sit on the platform, between the transformer and the edge of the platform, was approximately sixteen inches. And that although there were rules prescribing working space around transformers, and one of the rules prescribed a minimum horizontal clearance of three feet, four inches for unguarded parts carrying 11,000 volts, this rule only applied to

ground level installation; and there were no rules with respect to horizontal clearance above ground level.

The trial judge was of opinion the evidence with respect to the Code was irrelevant and immaterial to the playground issue upon which he proposed to submit the case to the jury. An issue pleaded in the declaration, and supported by proof was that for approximately seventeen years before Thomas was injured, children of all ages, from all over the neighborhood, habitually played upon the lot where the pump and transformer station were located. That many times the children played upon the north pole of the transformer bank, both below, on, and above a meter box attached to the north pole; and many times the children climbed upon the transformer platform and played there. That for three years, before he was burned in January, 1964, Thomas, nine, and his older brother, ten, and other children in the neighborhood played on the lot almost every day. In the summertime they would play baseball; later, football. And during the windy season they would fly kites. Frequently, if too many children gathered to make up a baseball or football team, the extra children, some Thomas's age, some younger, and some older, would climb up on the platform supporting the transformer bank and watch the activities from that point. And during kite season the children would frequently climb up on the platform and sit there and fly kites, seeking from this vantage point to get them to go higher. That many times when the children were playing on the lot Memphis' employees would talk with the children playing there; ask questions about their games, but never tell them to leave, nor make any other effort to exclude them from the free use of the lot as a playground.

It is uncontradicted that one witness, Mrs. Jewel Tisdale, spoke with defendants' employees about the children playing on the lot, and they told her they didn't have anything to do with it, that they just worked for Memphis and as far as they were concerned the children could play there. Mrs. Tisdale also called Memphis' office on several occasions before Thomas was burned, and reported that small children were playing upon the platform, and even in the fenced-in area where the well pump equipment was located, only to be told that she should call the police.

When Thomas was burned, the lot was enclosed on three sides by a hedge through which children could easily come and go, and was open on the north side, fronting on Willowview Street, except for a single chain stretched between two posts across the driveway leading onto the lot. There was no warning or danger sign anywhere on or about the transformer bank. There was no fence around the transformer bank, although one could have been built for a small amount of money. And, Memphis had made the platform supporting the transformer bank readily accessible to children playing on the lot by cutting down the hedge beneath the transformer, leaving stumps and branches sufficient to support a child and to form a convenient step-up for them; by installing a meter box with the bottom only 3.7 feet above the ground, with a small metal pipe running out of the bottom of the meter box over to the pole to which the meter was attached, so that a loop or stirrup was formed just under the meter box for use as a step in climbing the transformer bank pole. Additionally, Memphis had installed the meter box by means of two long screws or bolts which went through the post and extended several

inches, so as to furnish steps and handles for children to use in climbing to the platform. And, though it was not necessary that it be done as it was, all of these climbing arrangements were located just beneath the permanent metal spikes placed in the pole to be used by Memphis personnel in climbing to the transformer platform.

In fact, the platform was so accessible that on one occasion before the accident, a little girl, four and a half years of age, climbed up on to it, and then her mother climbed up and brought her down.

It is uncontradicted that on the day he was burned, Thomas and his brother, Boyd, climbed up on the platform by means of the hedge stumps and branches, the loop formed by the pipe extending from the bottom of the meter, the meter box and the long screws fastening it to the pole, and the permanent metal spikes leading from just above the top of the meter box up to the platform.

In this connection it should be reemphasized that the National Electrical Safety Code contained no provisions applying (1) to elevated transformers; (2) elevated transformer platforms; (3) to the location of meter boxes; (4) or the location or shape of pipes running therefrom; or (5) the means by which meter boxes might be fastened to poles; (6) or the nature and condition of anything growing under or around a transformer bank, such as the hedge under this one. But related, as we have said, solely to the safety of persons on the ground—not to the safety of persons upon a transformer bank.

In the light of this evidence we are forced to conclude the particular Code provisions proved and

sought to be relied on by Memphis were immaterial and irrelevant.

■ It is, of course, fundamental, even in the absence of a harmless error statute, that there can be no reversal by an appellate court for the exclusion of evidence which has no reasonable, or logical connection with the negligence alleged, and upon which the trial judge proposes to and does submit the case to the jury. This has been specifically said with reference to the admissibility of the National Electrical Safety Code. 75 A.L.R.2d 779, 780.

In *Douglas v. Neil,* 54 Tenn. 437, this Court declined to reverse for the improper exclusion of evidence which, if it had been admitted, clearly could not have varied the result. Again, in *Burton v. Farmers Building & Loan Assn.,* 104 Tenn. 414, 58 S.W. 230, we held that the admission or rejection of evidence directed to a matter that has become wholly immaterial in the determination of the case, cannot constitute cause of reversal. Also see *Duffield v. Spence,* Tenn.Ch.App., 51 S.W. 492.

As stated, the issue in this case was whether Memphis by action having nothing to do with the National Electrical Safety Code, and not even considered therein, had made the transformer bank readily and easily accessible to children so that they could and did play on it; and whether Memphis knew or should have known that the children were playing up on the platform where the dangerous high-voltage electric wires, transformers, and other electrical equipment were located. As to this issue it was totally irrelevant that Memphis had complied with a rule designed to promote safety on the ground by erecting its platform and stringing its wires in excess of the minimum requirements of that rule. As argued

by plaintiffs' counsel, in the light of the facts developed in this record, defendants might just as well have placed a ladder from the ground to the platform as to have maintained the structure as it did. And if it had done this, could it be validly argued that proof of compliance with an electrical code having nothing to do with safety on the platform bore such relevancy to the case as that its exclusion is reversible error? We think not.

Particularly applicable is T.C.A. sec. 27-117, which provides that no judgment shall be set aside or new trial granted by any appellate court on the ground of error in improperly rejecting evidence unless, in the opinion of the appellate court, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial.

█ Pursuant to this statute, this Court has held that there is no reversible error in the improper exclusion of evidence, not affecting the merits, and where it is apparent that the result was a correct one, and could not properly be otherwise upon a new trial, with the admission of such excluded evidence. *Pennsylvania R. Co. v. Naive* (1903), 112 Tenn. 239, 79 S.W. 124, 64 L.R.A. 443; *Lowry v. Southern R. Co.* (1906), 117 Tenn. 507, 101 S.W. 1157; *Moseley v. Goodman* (1917), 138 Tenn. 1, 195 S.W. 590; *Neilson & Kittle Canning Co. v. F. G. Lowe & Co.* (1923), 149 Tenn. 561, 260 S.W. 142.

On the record, we are of opinion the result in this case was the correct one, that it could not properly be otherwise upon a new trial even with the admission of excluded evidence, and acting under the mandate of the statute the case cannot be reversed and remanded for a new trial.

In further support of the conclusion we have reached, we point out that while the trial judge did exclude evidence of compliance with the Code as a defense as specially pleaded, he did not exclude from the jury consideration of Memphis' evidence that the transformer bank had been installed and maintained up to accepted electrical engineering standards. Memphis' evidence in this regard was quite strong, being offered by two electrical engineers of many years experience both in Memphis and throughout the country. All of this evidence went to the jury in support of Memphis' specially pleaded defense that it had constructed the transformer bank up to acceptable standards so as to be safe. In point of fact and law this defense and the evidence offered with respect thereto was stronger and of more validity than the special plea based on the Code. This defense of proper construction according to the customary practice throughout the United States applied generally to everything that was done by Memphis with respect to the installation. While the Code defense rested only upon the height of the platform and the height of the wires.

Additionally, the case was submitted to the jury on another strong specially pleaded defense by Memphis: that without regard to the fact children had played games on the open lot, Memphis had no knowledge children were playing on the transformer bank or reason to believe they would play there. So that Thomas Hay was a trespasser in so doing, and not one to whom an implied invitation had been extended by dedication or permissive use of the installation for play purposes. This was a strong defense, based on authority, which we are certain was ably argued to the jury as it was to this Court. But it was a defense which under the facts as developed in

this case presented an issue for decision by the jury, so that further consideration of it was precluded by the jury's verdict. But it was a valid defense and presented a jury issue on which Memphis could have gotten a jury verdict, and won the case.

■ Finally, with respect to this matter, where compliance with the provisions of the National Electrical Safety Code is specially pleaded as a defense under a city ordinance, the Code should be identified, authenticated and filed in the record. Upon a purely legal basis, this alone would save the exclusion of evidence with reference thereto from being reversible error. It must be borne in mind that the ordinance and the Code and compliance therewith were pleaded as a defense, so that the evidence offered with respect thereto had to relate to that defense. And in the absence of the Code from the record this special plea falls. It is only in the context of evidence in support of a special plea, that the exclusion of the evidence could even remotely be considered as reversible error. For, if the evidence about the Code was simply for the purpose of proving the construction of the transformer bank and its maintenance conformed to safe electical engineering practices, it would simply be cumulative evidence to that already offered by Memphis' witnesses with respect to this fact. So that on this account its exclusion could not be reversible under the harmless error statutes. *Monday v. Millsaps* (1953) 37 Tenn.App. 371, 264 S.W.2d 6.

In view of what we have said, it becomes unnecessary to consider whether or not Ordinance 752, sec. 2 is unconstitutional.

Accordingly, let an order be entered setting aside the judgment of the Court of Appeals in this case, and rein-

stating the judgment of the Circuit Court, which is in all things affirmed.

BURNETT, CHIEF JUSTICE, and DYER, CHATTIN and CRESON, JUSTICES, concur.