C. H. LOVE, Petitioner,

v.

Robert F. SMITH, Commissioner of the Department of Transportation for the State of Tennessee, Respondent.

Supreme Court of Tennessee.

June 5, 1978.

---

1. See now, however, T.C.A., § 59–1101 et seq.

McAllen Foutch, J. Hilton Conger, Smithville, for petitioner.

Robert J. Ames, Asst. Atty. Gen., Nashville, for respondent; Brooks McLemore, Jr., Atty. Gen., Nashville, of counsel.

## OPINION

BROCK, Justice.

This is an action of eminent domain brought by the State of Tennessee to condemn a three acre strip of the defendant's 161 acre farm for the purpose of widening State Highway No. 56. The right of the State to condemn is not denied; valuation of the land taken and incidental damages, if any, to the remainder were the only disputed issues. The case was heard by the judge and jury and resulted in a verdict totalling $21,250.00, consisting of $12,500.00 fair cash market value for the land taken and $8,750.00 in incidental damages to the remainder. The State appealed and the Court of Appeals reversed the judgment of the trial court and remanded for a new trial solely upon the ground that Charles Gentry, one of the defendant's three expert witnesses, appears to have considered only the "highest and best use" of the property taken in arriving at his estimate of $41,500.00 as the total for value of land taken and incidental damages to the remainder. We granted the petition for certiorari filed by the defendant landowner.

The offending testimony is as follows:

"Q. And you didn't value it as farm land at all. Is that right?

"A. You mean the balance of the land?

"Q. No, sir, the part taken. You didn't consider it as farm land at all?

"A. No, sir.

"Q. What was it being used for on June 14, 1970?

"A. I valued it at what I considered to be the highest and best use that it is adaptable to as a subdivision. There are a lot of residential houses across the street in front of it. It is ideal for development as housing.

"Q. And you didn't consider what it was being used for?

"A. No, sir.

"Q. Not at all?

"A. I considered it, in my opinion, as to what it was best used for on an open market.

"Q. Highest and best use; that use being residential purposes alone. Is that right?

"A. Yes."

Although the court admitted this testimony over the State's objection, it did instruct the jury that they were to consider all uses to which the land might reasonably be employed in reaching their verdict. We note too that this same witness on redirect examination testified as follows:

"Q. Mr. Gentry . . . even though this land has been used for farming uses and purposes, does it have other uses?

"A. Yes, sir.

"Q. Would you name some more?

"A. Well it could be used for residential; it could be used for commercial for a shopping center or a grocery store.

"Q. And it could be used for farming, also?

"A. Right, or a factory or industry site."

The other two expert witnesses who testified for the defendant, Hooper and Nichols, testified that in their opinion the defendant had suffered total damages of $36,000.00 and $41,000.00, respectively. Their estimates were based upon "all available uses." The defendant testified that his total damages were $50,000.00, consisting of $20,000.00 as the fair cash market value of the property taken and incidental damages of $30,000.00; the expert witness for the State gave an estimate of total damages in the sum of $6,525.00. As above noted, the total verdict rendered by the jury and approved by the trial judge was $21,250.00.

■ The objective of the court in an eminent domain proceeding is to ascertain and award just compensation to the landowner. The value of the land taken and the damages, if any, to the land remaining are to be based upon a fair, cash market value of the property on the date of the taking. *See Nashville Housing Authority v. Cohen*, Tenn., 541 S.W.2d 947, 950 (1976); *Alloway v. Nashville*, 88 Tenn. 510, 13 S.W. 123 (1890). And, as we held in *Cohen*, in determining what constitutes fair cash market value the jury must consider all capabilities of the property and all the legitimate uses for which it is available and reasonably adapted. Thus, it is improper to base the value of land solely upon its use for a particular purpose, such as, "its highest and best use." *Layne v. Speight*, Tenn., 529 S.W.2d 209, 214 (1975); *Alloway v. Nashville, supra*. Of course, the highest and best use may be considered in determining value but it may not be the sole measure thereof. *Davidson County Bd. of Education v. First American Nat'l Bank*, 202 Tenn. 9, 301 S.W.2d 905 (1957). A corollary of this principle is that expert witnesses in expressing their opinions of value should not be allowed "to give their opinions as to the value of property for a particular purpose." *Alloway v. Nashville, supra*, 88 Tenn. at 522-23, 13 S.W. at 125; *Davidson County Bd. of Education v. First American Nat'l Bank, supra*.

■ We are of the opinion that the testimony of the witness Gentry did offend the foregoing rule forbidding opinions based solely upon the "highest and best use" for which the property is adaptable; however, we are also of the opinion that the error was harmless. T.C.A., § 27-117, provides:

"No verdict or judgment shall be set aside or new trial granted by any appellate court, in any civil or criminal cause, on . . . account of the improper admission . . . of evidence . . ., unless, in the opinion of the appellate court to which application is made, after an examination of the entire record in the cause, it shall affirmatively appear that the error complained of has affected the results of the trial."

This statute places the burden upon the complaining party to show that he has been prejudiced by the error alleged. *Art Theater Guild, Inc. v. State ex rel. Rhodes*, 225 Tenn. 399, 469 S.W.2d 669, 671 (1971).

 Ordinarily, an error in admitting evidence is harmless if the fact shown by the offending evidence is also shown by other evidence in the record which is competent. *See Snow v. Owens*, Tenn.App., 505 S.W.2d 479, 486 (1973). If it appears to the reviewing court from an examination of the whole record that the verdict is unlikely to be different in the event of a retrial, the error must be considered to be harmless. *Hay v. Memphis Light, Gas and Water Division*, 221 Tenn. 258, 426 S.W.2d 182, 187–88 (1968).

Our examination of the entire record in this case convinces us that it does not affirmatively appear that the error in admitting the testimony of Gentry has affected the result of the trial.

First, the trial judge cautioned the jury that it must not ". . . consider alone the highest and best use nor are you to consider alone the value for which it is least usable. You are to consider all of the uses in making up your verdict. And I will let this testimony go to the jury for its weight rather than admissibility."

The total damages awarded by the jury and approved by the trial judge, $21,250.00, is well below the offending opinion of Gentry, $41,500.00, and is even below the valuations fixed by witnesses, Hooper and Nichols, $36,000.00 and $41,000.00, respectively, which were based upon "all available uses." In fact, it appears highly probable that the jury arrived at their verdict by averaging the value given by the State's witness, $6,525.00, with the lowest valuation given by the defendant's witnesses, $36,000.00, thus arriving at the total of $21,250.00. Thus, if the testimony of Gentry had been excluded but that of the other witnesses retained, the prospect is that the award would have been the same or substantially so.

It appears that the jury heeded the cautionary instructions of the trial judge and fixed its verdict based upon the fair cash market value of the property at the time of taking, considering all capabilities of the property and all the legitimate uses for which it was available and reasonably adapted. We, therefore, conclude that the respondent has failed to affirmatively show that the error in admitting Gentry's testimony affected the results of the trial.

 By cross-assignments of error the respondent Commissioner complains of the action of the trial court and the Court of Appeals in refusing to permit the State to introduce evidence of the purchase price paid by the petitioner for the subject farm and in refusing to permit the State to cross examine the petitioner respecting the valuation placed upon the farm when he purchased it, as shown by an affidavit which petitioner executed at the time of purchase as required by T.C.A., § 67–4102, Item S(a).

The trial judge cited the following reasons for his refusal to admit direct evidence of the purchase price paid by the petitioner at the time he bought the farm in question in 1970, to wit:

"1. There have been additional improvements.

"2. The land features themselves have been altered.

"3. The deed itself doesn't describe the same land in question.

"4. There has been an elapse of four years.

"5. The sale wasn't a purely voluntary sale."

An examination of the record shows that there was evidence to support these findings of the trial judge upon the basis of

which he refused to admit the evidence in question.

Thus, there was evidence that the seller from whom the petitioner purchased the property was in financial straits at the time of the sale to the petitioner, so that, the sale was not altogether a free and voluntary one. *See Railroad v. Hinds,* 134 Tenn. 293, 183 S.W. 985 (1916).

 The time lapse between the sale of the property to the petitioner and the taking of the strip in question by the State was approximately four and one-half years and the evidence shows that there had been a substantial increase in land values in the area of this property during that period of time. Therefore, exclusion of evidence of that sale upon the ground that it was not material was not error. *Maryville Housing Authority v. Ramsey,* Tenn.App., 484 S.W.2d 73 (1972); *Polk v. City of Memphis,* 15 Tenn.App. 73 (1932).

The proof also showed that the purchase price was for two tracts of land, one of which was not involved in this condemnation proceeding. There is no way of knowing what portion of the purchase price should properly be allocated to the tract from which the strip in question is being taken; hence, evidence of the purchase price paid for the two tracts together is of doubtful materiality upon the issue of the value of the land here involved. We find no error in the holding of the lower courts that direct evidence of the price paid by the petitioner for the farm in 1970 was inadmissible at this trial.

Likewise, we find no error in the action of the trial court in refusing to permit the State to cross examine the petitioner with respect to the affidavit which he made as required by T.C.A., § 67–4102, Item S, wherein he stated that the consideration which he paid for the farm or its value, whichever was greater, was $58,000.00. This affidavit was made by the petitioner at the time of his purchase of the farm in 1970 and is required by the statute in connection with the assessment and payment of a tax upon the transfer of land. In our opinion, the trial court correctly excluded

such cross examination because of the mandate of another provision of that statute which is as follows:

"Any oath required in subsections (a) and (b) of this item of this section shall not be introduced as evidence in any proceeding had in connection with any condemnation action for the purpose of indicating the value of such real property."

It is our opinion that this provision of the statute forbids the introduction, whether by way of direct evidence or cross examination, of evidence of the contents of the affidavit required by the statute.

Accordingly, the judgment of the Court of Appeals is reversed and that of the trial court affirmed and reinstated. This cause is remanded to the trial court for such further proceedings as may be required consistent with this Opinion. Costs incurred in this Court are assessed against the respondent.

HENRY, C. J., and FONES, COOPER and HARBISON, JJ., concur.