**HAURY AND SMITH REALTY CO., A**
Tennessee Corporation,
Plaintiff/Appellee,

v.

**PICCADILLY PARTNERS I, Piccadilly Partners II, David Lassiter, Edward H. Klopp, Daniel R. Eiseman, David Vanek, William L. Carter, J. Howard Hall, J. Kimbrough Johnson, Ellen M. Trace, Michael P. Buchness, Carl A. Sutton, Michael Siewruk, George Sara and Robert Huseby, Defendants/Appellants.**

Court of Appeals of Tennessee,
Middle Section.

Aug. 1, 1990.

Permission to Appeal Denied by
Supreme Court Dec. 3, 1990.

David B. Herbert, Gerald C. Wigger, Ortale, Kelley, Herbert & Crawford, Nashville, for plaintiff/appellee.

John W. Wagster, J. Russell Heldman, Hollins, Wagster & Yarbrough, Nashville, for defendants/appellants Piccadilly Partners I, J. Kimbrough Johnson, J. Howard Hall and Robert Huseby.

Tyree B. Harris, Baker, Worthington, Crossley, Stansberry & Woolf, Nashville, for defendants/appellants Piccadilly Partners II, Edward F. Klopp, Daniel R. Eisemann, David V. Vanek, William L. Carter, Ellen M. Trace, Michael E. Buchness, Carl A. Sutton, Michael Siewruk and George S. Sara.

Russell Willis, Nashville, for defendant/appellant D. Lassiter.

## OPINION

JOE C. LOSER, Jr., Special Judge.

This is a suit by plaintiff, a real estate broker, for damages for breach of contracts whereby defendants allegedly agreed for plaintiff to sell certain properties.

The contracts were executed by plaintiff and Laventure Properties, Inc., which was the sole defendant in the original complaint. Subsequently the complaint was amended to include all of the partners in two partnerships, Piccadilly Partners, which has been referred to as "Piccadilly I" to distinguish it from the other partnership, and Piccadilly Partners II. It was alleged that the two partnerships were contractually bound to plaintiff on the contracts signed by Laventure Properties, Inc. because both partnerships had designated Laventure Properties, Inc., as managing agent of their affairs.

After voluntary nonsuit of the case against Laventure Properties, Inc., the suit against both partnerships was tried to a jury which returned a verdict in favor of plaintiff and against both partnerships in

the amount of $116,994.00. All but one of the members of the partnerships have appealed.

■ Piccadilly Partners II complains of the admission of a document designated Exhibit 6, which purports to designate Laventure Properties, Inc., as the managing agent of that partnership.

Essentially the complaint of appellants is that Exhibit 6 was not authenticated. The exhibit was offered through the testimony of Charles Blackard, Jr., an employee of plaintiff who professed no personal knowledge of the execution of the instrument or familiarity with the signatures thereon and admitted that any information in his possession about the same was hearsay.

Plaintiff's brief apparently concedes the foregoing, but asserts that the document was admissible because its signatures purport to have been authenticated by the certificates of notaries public, citing Tennessee Rules of Evidence, Rule 902(8). The trial of this cause and the admission of Exhibit 6 occurred on January 25, 1989, prior to the effective date of said rules. Plaintiff cites no statute, authority or rule in effect at the time of trial whereby a document of this nature may be authenticated for admission in evidence by the certificate of a notary public and no such statute, authority or rule is known to this Court.

Plaintiff argues that the admission of the document was within the discretionary powers of the Trial Judge because no defendant took the stand to deny the execution of it. No authority is cited to support this argument, and none is known to this Court. This document is not the contract for breach of which the defendants were sued. It is relevant only to show the authority of the agent which allegedly executed the contracts for breach of which the defendants were sued. It is not mentioned in the complaint which states merely that "the parties entered into an exclusive listing agreement." Thus, the document is not subject to presumed authenticity under Tenn.Code Ann. § 24–5–104.

■ As a general rule, the execution or authenticity of a private writing must be established before it may be admitted in evidence. This rule has been applied and enforced with respect to writings of every character and description, and a written instrument is admissible only after the signature is proved and identified. 32 C.J.S. *Evidence* § 733 at pp. 1065, 1066, 1067 and authorities cited thereunder.

At common law, as a preliminary to the introduction in evidence of private writings (other than ancient documents) their execution must be proved and their authenticity established. A writing standing alone is not evidence; it must be accompanied by competent proof of some sort from which the jury can infer that it is authentic and that it was executed or written by the party by whom it purports to be written or executed. 29 Am.Jur.2d *Evidence* § 849 pp. 948, 949.

The foregoing rule has been recognized and enforced in *Hay v. Memphis Light Gas and Water Division*, 221 Tenn. 258, 426 S.W.2d 182 (1967) (a safety code), *B.F. Myers & Son of Goodlettsville v. Evans*, Tenn.App. 1980, 612 S.W.2d 912 (Statement for service) and *Bennett v. Anderson*, 20 Tenn.App. 523, 101 S.W.2d 148 (1936) (marriage certificate).

Exhibit 6 relates only to the members of Piccadilly Partners II. No corresponding document was offered in evidence as to Piccadilly Partners I.

■ Both partnerships insist that there was no other evidence to establish the authority of Laventure Properties, Inc., to act for them, or either of them in executing the contract with plaintiff, for breach of which plaintiff has sued.

Plaintiff relies upon two "listing contracts" executed by Laventure Properties, Inc. on February 15, 1986, and May 7, 1986. Neither of said contracts purports to have been executed by or on behalf of Piccadilly Partners I or Piccadilly Partners II, or any member of either partnership acting as such. Both purport to be executed by Laventure Properties, Inc., on its own behalf.

Plaintiff relies upon a warranty deed executed on November 8, 1985, whereby Laventure Properties, Inc. conveyed certain properties to Piccadilly Partners. Nothing in said deed authorizes Laventure Properties, Inc. to obligate Piccadilly Partners to plaintiff or ratifies or adopts any agreement previously made by Laventure with plaintiff. The deed does state that the property is conveyed to:

> Piccadilly Partners, a Tennessee general partnership having Laventure Properties, Inc., as Managing Partner. . . .

On the same date as the warranty deed, November 8, 1985, Laventure Properties, Inc., executed a deed of trust conveying the same property to a trustee to secure a debt of $910,400. The deed was signed:

> Piccadilly Partners, a Tennessee general partnership
>
> By Lawrence M. Wells, President
>
> By Julie M. Wells, Vice President

No competent evidence is found in this record that Laventure Properties, Inc. was authorized by Piccadilly Partners to execute said instrument.

It is true that Lawrence and Julie Wells were partners in both Piccadilly Partners I and II, but their signatures were affixed to the trust deed as officers of Laventure Properties, Inc., and not as members of Piccadilly Partners I or II.

In *Crouch v. Bowman,* 22 Tenn. (3 Humph) 209, 1842, it was held that every partner is the agent of the partnership and may bind the members of the firm in respect to the business of the partnership, but he must subscribe the name or style of the partnership.

■ Although no authority is found involving the facts of this case, this Court is of the opinion that a partner who assumes to act for a partnership must do so overtly and not deviously by acting as an officer of a corporation which claims to be the agent of the partnership. That is to say, a partner must act as a partner-agent of the partnership in order to bind the partnership; and when a partner undertakes to act as an agent of an agent of the partnership, his presumptive authority to act as a partner agent gives way to his overt assertion of authority to act as agent of agent of the partnership.

In short, Mr. or Mrs. Wells might have effectively acted for the partnership by signing the partnership name by their own signature; but they did not do this. They relied upon the agency of Laventure Properties, Inc. to act for the partnership and signed the corporate name as agent. Their individual signatures were not as partners, but as officers of the corporation.

As a result, this is not an instance of a partner or partners executing a document on behalf of a partnership which would amount to a ratification and acceptance of the statement or condition of the warranty deed designating Laventure Properties, Inc. as managing agent. On the other hand, the signatures of Mr. and Mrs. Wells, created a statement or admission by the corporation that it was the duly authorized agent of Piccadilly Partners.

■ This, of course, is contrary to the well established rule that agency may not be proven by the out-of-court, unsworn, statement of the agent. *Moore v. Davis,* 51 Tenn. (4 Heisk) 540 (1871); *Hart v. First Nat. Bank of Memphis,* Tenn.App. 1985, 690 S.W.2d 536 and authorities cited therein.

■ So far as this record shows, Laventure Properties, Inc., undertook to create an agency in itself by its own acts and declarations. Agency is established by consent of the principal and not by creations of the agent.

In respect to Piccadilly Partners II, a similar procedure was followed. On April 1, 1986, Laventure Properties, Inc., conveyed certain property to Piccadilly Partners II with the same reference to Laventure Properties, Inc., as managing agent, and, on April 17, 1986, signed a similar trust deed. For the reasons already discussed, this procedure does not establish the agency of Laventure Properties, Inc.

Plaintiff relies upon subsequent conveyance of various lots by Piccadilly Partners to Carter Real Property, Inc., David M. Lassiter, J. Kimbrough V. Johnson, Ret

Properties, Inc., and Margaret Buchness. Each of these conveyances was signed on June 10, 1987, as follows:

Piccadilly Partners

By

Laventure Properties, Inc.

Managing Partner

By Julie Wells

President

■ Even though two of the conveyees were members of Piccadilly Partners I, no evidence is cited or found that the conveyees accepted and recorded the deeds. A recital in a deed is not binding upon the conveyee unless ratified by the conveyee by acceptance of the deed or other equivalent act.

In 26 C.J.S. *Deeds* § 51, p. 708, 709 is found the following text:

Since the law does not force a man to take title to real property against his will, it is essential to the validity of a deed that there be an acceptance of the instrument by the grantee, particularly where the conveyance imposes an obligation on the grantee.

This Court concludes that the record contains insufficient evidence to support a finding of agency of Laventure Properties, Inc. to act for and to obligate either of the partnerships or their members. Ordinarily, this would require reversal and dismissal. However, the procedure and circumstances of the case militate against such a harsh result.

Plaintiff offered a document which would have established agency, and the Trial Judge erroneously admitted the document without authentication. Other evidence of authenticity of the document was undoubtedly available and would have been presented except for the erroneous action of the Trial Judge. Also, other, competent evidence of agency as to Piccadilly Partners was apparently available, if proper rulings had been made. In these circumstances, justice requires that the plaintiff be allowed an opportunity to authenticate the document by competent evidence.

In *Nabors v. Gearhiser*, Tenn. 1975, 525 S.W.2d 145, the Trial Judge erroneously admitted testimony of a material agreement. In reversing, the Supreme Court said:

From our view of the record, we hold that the trial judge was in error in admitting testimony of Mrs. Gearhiser relative to an alleged agreement between her and Mr. Box entered into in September, 1963, and that the Court of Appeals was in error in basing its decision in this case on Mrs. Gearhiser's testimony.

\* \* \* \* \* \*

■ Where it appears from the record, as it does here, that more satisfactory evidence can be obtained on the issues presented, and, if produced, will enable the court to come to a more satisfactory conclusion, the cause may be remanded for such additional proof, and for a decision in the trial court based thereon. T.C.A. § 27–329. *Stokely v. Southern Railway Company*, 57 Tenn.App. 271, 418 S.W.2d 255 (1967); *Federated Mut. Imp. & Hdwe. Ins. Co. v. Anderson*, 49 Tenn.App. 124, 351 S.W.2d 411 (1961).

This Court concludes from the foregoing that the proper course of action in the present case is a remand for new trial as to the appealing members of Piccadilly Partners I, and II.

The rulings heretofore announced are conclusive of the appeal. Other issues are pretermitted in the expectation of correct rulings upon retrial. Particularly, the award of damages, if any should not be a lump sum against both partnerships, but separate amounts representing the separate damages resulting from the separate breaches of the separate contracts by the separate partnerships.

The judgment of the Trial Court is reversed and vacated, and the cause is remanded for a new trial. Costs of this appeal are taxed against the plaintiff.

Reversed and Remanded.

TODD, P.J., and KOCH, J., concur.