# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
April 11, 2018 Session

## LEXON INSURANCE COMPANY v. WINDHAVEN SHORES, INC. ET AL.

**Appeal from the Chancery Court for Davidson County**
**No. 15-165-III          Ellen Hobbs Lyle, Chancellor**

_____

### No. M2017-00959-COA-R3-CV
_____

In this appeal arising from a suit on an indemnity agreement, the indemnitee plaintiff moved for summary judgment. In response, one of the named indemnitors claimed that she could not determine if the signature on the agreement was hers. Another named indemnitor claimed that he was not sure if the signature on the agreement was his but conceded that it could be. And neither purported indemnitor recalled signing the indemnity agreement. The trial court determined that there was no genuine issue of material fact and granted summary judgment. On appeal, the purported indemnitors claim that, because the authenticity of their signatures was in dispute, summary judgment was improper. Alternatively, if summary judgment was appropriate on the issue of liability, the purported indemnitors claim that the trial court erred in its award of damages by including certain unpaid bond premiums and attorney's fees. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

W. NEAL MCBRAYER, J., delivered the opinion of the court, in which ANDY D. BENNETT and RICHARD H. DINKINS, JJ., joined.

Mike J. Urquhart, Nashville, Tennessee, for the appellants, the Estate of Jack Williams and Frances Williams.

Philip L. Robertson and Katherine Garro McCain, Franklin, Tennessee, for the appellee, Lexon Insurance Company.

## OPINION

### I.

### A.

As a condition to obtaining final plat approval for a section of a residential subdivision, the Metropolitan Planning Commission for Nashville and Davidson County required the developer, Windhaven Shores, Inc., to provide a performance bond for the public improvements in the section.[1] The performance bond took the form of a "Performance Agreement" signed by Windhaven Shores, as principal, and Lexon Insurance Co., as surety, in which they both bound themselves in a penal sum of $334,500 as guarantors for the completion of the public improvements.

Days before execution of the performance agreement, Windhaven Shores and Jack Williams Construction Co. signed, allegedly along with five individuals, a General Agreement of Indemnity (the "Indemnity Agreement") in favor of Lexon. In consideration for Lexon agreeing to serve as surety under the performance agreement, the parties to the Indemnity Agreement agreed to "indemnify and save [Lexon] harmless from and against every claim, demand, liability, cost, charge, suit, judgment and expense which [Lexon] may pay or incur in consequence of having executed, or procured the execution of, such bond[ ]." The indemnified obligations specifically extended to "fees of attorneys" as well as to "the expense of procuring, or attempting to procure, release from liability, or in bringing suit to enforce the obligation of any of the indemnitors under [the Indemnity Agreement]." The Indemnity Agreement covered all current and future performance agreements that might be executed by Lexon on behalf of any one of the indemnitors.

As work progressed on the subdivision, Windhaven Shores and Lexon signed additional performance agreements in favor of the planning commission, which were similar to the first. The additional performance agreements guaranteed the completion of the public improvements in other sections of the subdivision.

Problems arose when Lexon's obligations as surety under the performance agreements came up for renewal. Despite sending invoices, Lexon's efforts to collect renewal premiums or, alternatively, to obtain a release of its obligations under the performance agreements proved unsuccessful. Then Lexon received separate demands

---

[1] The facts are taken from the parties' pleadings or the statement of undisputed material facts and responses. In some instances, the facts are undisputed only for the purposes of ruling on the motion for summary judgment. *See* Tenn. R. Civ. P. 56.03.

from the planning commission under the performance agreements due to Windhaven Shores's alleged failure to complete improvements in the subdivision.

Ultimately, the Metropolitan Government of Nashville & Davidson County, on behalf of the planning commission, sued Windhaven Shores and Lexon for failure to complete the public improvements in the subdivision and for breach of the performance agreements. Windhaven Shores did not respond to the complaint.

Lexon settled a portion of the suit, with Lexon agreeing to complete some of the improvements. Lexon spent $144,172.10 on this effort. The case proceeded on the issues of whether, under the performance agreements, Lexon guaranteed completion of turn lanes on the public road providing access to the subdivision and, if so, whether Lexon could be held solely liable for that work.[2] Lexon lost in the trial court, and while the case was on appeal to this Court, Lexon agreed to settle with Metro by payment of $121,000. The parties' settlement agreement provided that, with receipt of the $121,000 payment, the performance agreements would be "deemed satisfied in full and rendered null, void, and of no further operation and effect."

B.

Having incurred expenses in completing the public improvements and defending against Metro's suit, Lexon sued in the Chancery Court of Davidson County, Tennessee, seeking recovery of those amounts plus unpaid premiums and attorney's fees and costs under the terms of the Indemnity Agreement. Lexon named as defendants Windhaven Shores, Jack Williams Construction Co., spouses Jack and Frances Williams, and Bonnie Saindon, claiming that each had signed the Indemnity Agreement.[3] Neither Windhaven Shores nor Jack Williams Construction Co. answered the complaint. In their answers, the individual defendants each denied Lexon's allegations that they signed the Indemnity Agreement, albeit for different reasons. Ms. Saindon denied signing the Indemnity Agreement while Mr. and Mrs. Williams answered that they could "not recall" signing the Indemnity Agreement.

Lexon moved for summary judgment against the defendants, including those that had not answered. In support of its motion, among other things, Lexon relied on the declaration of Michael Belinski, an employee and attorney for Lexon. Under penalty of perjury and based on his personal knowledge, Mr. Belinski stated that each of the defendants executed the Indemnity Agreement.

---

[2] Metro sued other bonding companies involved in the subdivision's development in addition to Lexon.

[3] Lexon also named as defendants Ms. Saindon's spouse, Robert W. Saindon, and Robert W. Phillips. Mr. Saindon died shortly after the suit was filed. Mr. Phillips answered, pleading discharge in bankruptcy as an affirmative defense. *See* Tenn. R. Civ. P. 8.03.

3

Ms. Saindon responded with her own motion for summary judgment. Her accompanying affidavit stated that "I have reviewed the Indemnity Agreement, and I did not sign it, nor did I authorize someone to sign the Indemnity Agreement on my behalf." The affidavit went on that "[t]he signature on the Indemnity Agreement purporting to be mine was forged and is fraudulent." In addition to her affidavit, Ms. Saindon exhibited to her motion the signature page from the Indemnity Agreement and, as examples of her signature, other documents she had signed.

Mr. and Mrs. Williams also submitted affidavits in opposition to Lexon's motion for summary judgment. Mrs. Williams's affidavit stated that she "ha[d] no knowledge or recollection of signing the referenced October 29, 2003 Indemnity Agreement." She explained that "I do not admit that one of the signatures [on the Indemnity Agreement] appears to be mine as I have looked at the signature and I cannot determine for sure it to be mine."

Mr. Williams's affidavit also stated that he could not recall signing the Indemnity Agreement. But then he conceded that he was unsure whether the signature on the Indemnity Agreement was his, blaming both the passage of time and his advanced age.

> I have looked at the signatures on the [Indemnity Agreement], I cannot definitively state that one of those signatures is or is not mine, I am not sure. Frankly it could or could not be mine. I just don't know. You must understand that I am 87 years old, and the loss of my memory is very frustrating for me. This document was signed almost 15 years ago and I just don't remember.

In his affidavit, Mr. Williams also offered that he had "looked at the signature of Francis [sic] Williams, and it does not appear to be her signature."

In addition to the attack by Mr. and Mrs. Williams on the Indemnity Agreement, their response took issue with Lexon's damages claim. They contended that Lexon could not recover premiums accruing after the breaches of the performance agreements and the liability under those agreements were determined. Their response to the motion for summary judgment made no mention of Lexon's request for an award of attorney's fees. But in response to Lexon's statement of material facts, Mr. and Mrs. Williams disputed that Lexon had "incurred attorney's fees and costs in the amount of $69,459.90." Specifically, they replied "[d]isputed as to the reasonableness and customary amount of the fees." Mr. and Mrs. Williams also provided an affidavit from an attorney, which stated that he was unable to determine whether the attorney's fees and costs incurred by Lexon were reasonable and necessary due to insufficient detail.

The trial court granted Lexon's motion for summary judgment in part and denied it in part. The court granted summary judgment against Windhaven Shores and Jack

Williams Construction Co. Neither entity replied to the motion for summary judgment. The court denied the summary judgment against Ms. Saindon as well as her cross-motion for summary judgment. In response to her cross-motion, Lexon submitted an affidavit offering impeachment testimony to Ms. Saindon's, countering her claim that she was unaware of the Indemnity Agreement until Lexon filed suit. The affidavit also offered other samples of Ms. Saindon's signature that matched her alleged signature on the Indemnity Agreement. The court concluded that there were "genuine issues of material fact for trial[:] whether she signed the Indemnity Agreement, authorized some[one] else to sign the Agreement on her behalf, and/or whether the Saindon signature [wa]s forged and fraudulent."

The court granted Lexon summary judgment against Mr. and Mrs. Williams. It determined their affidavits were insufficient to overcome "the legal presumption in favor of the validity and regularity of written instruments." Rather than setting forth "clear and satisfactory evidence that Defendant[s] Jack and Frances Williams did not sign the Indemnity Agreement," the affidavits "raise[d], at best, metaphysical doubts as to the validity of the signatures." The court concluded that this was "insufficient to defeat summary judgment."

The court noted that, "[i]n addition to defending against liability based upon invalid signatures, Defendants Jack and Frances Williams contest the Plaintiff's calculation of damages." But the court identified the issue as only related to the amount of premiums owed. It considered the issue waived because their argument was "not supported by any legal authority, analysis, citation to provisions in the Indemnity Agreement, or citation to the record." So the court awarded Lexon a judgment against Mr. and Mrs. Williams, jointly and severally, in the amount of $446,585.00, which included $69,459.90 in attorney's fees and costs and $111,953.00 in unpaid premiums. The court also certified the judgment as final. *See* Tenn. R. Civ. P. 54.02.

## II.

On appeal, Mr. and Mrs. Williams raise three issues for review.[4] The first relates to whether summary judgment was proper and is stated somewhat generically as "Did the trial court err when it granted summary judgment to the Plaintiff?" The second two issues relate to the monetary judgment. We address those issues below.

---

[4] Mr. Williams passed away shortly after oral argument in this case. We granted leave to substitute Peggy D. Mathes, administrator ad litem for the Estate of Jack Williams, as appellant in the place of Mr. Williams. *See* Tenn. R. App. P. 19.

5

A.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. The moving party has the initial "burden of persuading the court that no genuine and material factual issues exist and that it is . . . entitled to a judgment as a matter of law." *Byrd v. Hall*, 847 S.W.2d 208, 211 (Tenn. 1993). If, as is the case here, "the moving party bears the burden of proof on the challenged claim at trial, that party must produce at the summary judgment stage evidence that, if uncontroverted at trial, would entitle it to a directed verdict." *TWB Architects, Inc. v. Braxton, LLC*, ___ S.W.3d ___, No. M2017-00423-SC-R11-CV, 2019 WL 3491467, at *7 (Tenn. July 22, 2019) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 331 (1986) (Brennan, J., dissenting)).

If the moving party satisfies its burden, then the nonmoving party must demonstrate that there is a genuine, material fact dispute or the motion for summary judgment will be granted. *Id.* Satisfying this burden requires something more than the allegations or denials of pleadings. *Rye v. Women's Care Ctr. of Memphis, MPLLC*, 477 S.W.3d 235, 265 (Tenn. 2015). The nonmoving party must "by affidavits or one of the other means provided in Tennessee Rule 56, 'set forth specific facts' *at the summary judgment stage* 'showing that there is a genuine issue for trial.'" *Id.* (quoting Tenn. R. Civ. P. 56.06). We accept the evidence offered by the nonmoving party as true. *Byrd*, 847 S.W.2d at 215.

A trial court's decision on a motion for summary judgment enjoys no presumption of correctness on appeal. *Martin v. Norfolk S. Ry. Co.*, 271 S.W.3d 76, 84 (Tenn. 2008); *Blair v. W. Town Mall*, 130 S.W.3d 761, 763 (Tenn. 2004). We review the summary judgment decision as a question of law. *Rye*, 477 S.W.3d at 250; *Martin*, 271 S.W.3d at 84; *Blair*, 130 S.W.3d at 763.

In the argument section of their brief, Mr. and Mrs. Williams expand on their first issue by explaining that summary judgment was improper because "a material question of fact existed as to the execution of the [Indemnity] [A]greement." According to them, the specific facts showing that execution of the Indemnity Agreement was at issue are that Mr. Williams "is claiming he did not recall signing the document and cannot state that the signature is his" and Mrs. Williams is "claiming that she does not recall signing the document and that the signature is not hers." Taking their claims together with Ms. Saindon's testimony that her signature was forged, Mr. and Mrs. Williams submit that there was more than a metaphysical doubt as to the authenticity of the Indemnity Agreement. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986), *quoted in Rye*, 477 S.W.3d at 251.

6

As an initial matter, we disagree with the characterization of the facts. Mrs. Williams never denied that the signature on the Indemnity Agreement was hers. Not unlike her husband, she stated that "I do not admit that one of the signatures [on the Indemnity Agreement] appears to be mine as I have looked at the signature and I cannot determine for sure it to be mine." None of the statements in her affidavit amount to a denial that the signature appearing above her printed name was hers. The question in this case is whether this mattered.

The trial court concluded that a lack of a denial mattered based upon "the presumption in favor of the validity and regularity of written instrument[s]." *See Ervin v. Ervin*, No. 86-95-II, 1986 WL 9007, at *2 (Tenn. Ct. App. Aug. 22, 1986). The court went on to quote cases of this Court holding that a "person asserting the invalidity [of a written instrument] has the burden o[f] proving his allegations by clear and satisfactory evidence." *Id.* But the presumption relied on by the trial court and the corresponding burden for overcoming it apply only if a party is challenging a document accompanied by a certificate of acknowledgment.[5] *See id.* at *1; *Kyle v. Kyle*, 74 S.W.2d 1065, 1067 (Tenn. Ct. App. 1934); *Kennedy v. Sec. Bldg. & Sav. Ass'n*, 57 S.W. 388, 395 (Tenn. Ch. App. 1900); *see also In re Marsh*, 12 S.W.3d 449, 453 (Tenn. 2000) (A party "should be able assume that if [a document] contains an acknowledgment to which a notary's seal is affixed, then it has been properly authenticated and is valid, that is, free from apparent forgery or fraud."). As Mr. and Mrs. Williams point out, their signatures on the Indemnity Agreement were not acknowledged. *See* Tenn. Code Ann. §§ 66-22-101 to -105 (2015 & Supp. 2018).

1. Authentication of the Indemnity Agreement

Before we consider whether the affidavits of Mr. and Mrs. Williams showed that there was a genuine issue for trial, we must make our own determination of whether Lexon satisfied its initial burden on summary judgment. *See Eadie v. Complete Co.*, 142 S.W.3d 288, 291 (Tenn. 2004); *Blair*, 130 S.W.3d at 763. Part of this burden included proof of "the existence of a valid and enforceable contract." *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011).

In substance, if not necessarily in form, evidence filed in "support [of] a motion for summary judgment must be admissible." *Shipley v. Williams*, 350 S.W.3d 527, 564-65 & n.12 (Tenn. 2011) (Koch, J., concurring in part and dissenting in part); *see also Byrd*, 847 S.W.2d at 215-16 ("[T]he facts on which the nonmovant relies must be

---

[5] Lexon relies on *Ali v. Professional Real Estate Developers, Inc.*, for the proposition that, "[w]hen a written instrument is challenged based on the allegation that a signature on the instrument has been forged, the burden of proving the existence of a forgery is on the party seeking to invalidate the instrument." M1999-00082-COA-R3-CV, 2000 WL 192562, *4 (Tenn. Ct. App. 2000). *Ali* involved a challenge to the signature on a general power of attorney. *Id.* at *1. The decision does not indicate whether the challenged signature was acknowledged.

7

admissible at the trial but need not be in admissible form as presented in the motion (otherwise an affidavit, for example, would be excluded as hearsay).").

> To be admissible, evidence at the summary judgment stage must satisfy the requirements of the Tennessee Rules of Evidence, as well as any other requirements controlling the admissibility of particular types of evidence. Thus, evidence that would be substantively inadmissible at trial would likewise be inadmissible at the summary judgment stage.

*Shipley*, 350 S.W.3d at 565 (Koch, J., concurring in part and dissenting in part). An abuse of discretion standard applies to decisions regarding the admissibility of evidence filed in support of or in opposition to motions for summary judgment. *Id.* at 552 (majority opinion).

Generally, "authenticity of a private writing must be established before it may be admitted in evidence."[6] *Haury & Smith Realty Co. v. Piccadilly Partners I*, 802 S.W.2d 612, 614 (Tenn. Ct. App. 1990). Authentication "is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a). For signed writings, this would include proof of signing by the party to the writing. *Haury & Smith Realty Co.*, 802 S.W.2d at 614. So "[a] writing standing alone is not evidence; it must be accompanied by competent proof of some sort from which the [trier of fact] can infer that it is authentic and that it was executed or written by the party by whom it purports to be written or executed." *Id.*

On this record, we cannot conclude that the trial court abused its discretion in considering the Indemnity Agreement admissible for purposes of summary judgment. To authenticate the Indemnity Agreement, Lexon relied on the declaration of its employee, Mr. Belinski, who testified on personal knowledge that Mr. and Mrs. Williams "executed" the Indemnity Agreement. The declaration was sufficient for the court to infer that the Indemnity Agreement was authentic and that it was in fact signed by Mr. and Mrs. Williams. The "testimony of a witness who saw the alleged signor sign the writing" is one method to prove that a signature on a document was made by the person who purportedly signed it. 32A C.J.S. *Evidence* § 1091, Westlaw (database updated June 2019).

On appeal, Mr. and Mrs. Williams complain that Mr. Belinski's declaration lacks specifics.[7] The declaration "only states that the 'defendants signed' the document, but

---

[6] Some writings are self-authenticating and require no "[e]xtrinsic evidence of authenticity as a condition precedent to admissibility." Tenn. R. Evid. 902.

[7] Mr. and Mrs. Williams did not bring their concerns about the lack of detail in Mr. Belinski's declaration to the court's attention in responding to the motion for summary judgment. Ordinarily, the "[f]ailure to object [to] evidence in a timely and specific fashion precludes taking issue on appeal with the admission of the evidence." *Grandstaff v. Hawks*, 36 S.W.3d 482, 488 (Tenn. Ct. App. 2000); *see* Tenn.

does not indicate . . . how he obtained this knowledge." The declaration does lack detail surrounding how Mr. Belinski came to witness the execution of the Indemnity Agreement. And a lack of detail can lead to the conclusion that the declarant or affiant lacks the necessary personal knowledge to competently testify. *See* Tenn. R. Evid. 602; *see also Synovus Bank v. Paczko*, No. M2014-00897-COA-R3-CV, 2015 WL 3455965, at *4 (Tenn. Ct. App. May 29, 2015). Still we conclude that the declaration affirmatively shows Mr. Belinski's competence to testify to the execution of the Indemnity Agreement. *See* Tenn. R. Civ. P. 56.06. An explanation of the basis of one's personal knowledge is not necessary if "personal knowledge can be reasonably inferred based on the affiant's position and other facts contained in the affidavit." *Wells Fargo Bank v. Hammond*, 22 N.E.3d 1140, 1147 (Ohio Ct. App. 2014). We can make such an inference here.

### 2. Presumption of Execution

Although we conclude that the trial court applied a presumption that is only applicable to acknowledged documents, we conclude a similar presumption applied once the Indemnity Agreement was deemed admissible. Under Tennessee Code Annotated § 24-5-105, "[t]he execution or assignment of instruments offered in evidence by the defendant, when allowed by law, is equally conclusive as when introduced by plaintiff, unless denied under oath." Tenn. Code Ann. § 24-5-105 (2017). The presumption has been described as a "rule[ ] of evidence" that "makes the instruments embraced therein conclusive unless denied under oath." *Birchfield Grocery Co. v. Swaney & Wear*, 290 S.W. 24, 25 (Tenn. 1926).

In light of the statutory presumption, we conclude that there was no dispute of fact concerning the execution of the Indemnity Agreement by Mr. and Mrs. Williams. Unlike Ms. Saindon, Mr. and Mrs. Williams never denied their signatures under oath. Even accepting their testimony as true, their affidavits at most establish that Mr. and Mrs. Williams do not recall signing the Indemnity Agreement and that Mrs. Williams cannot determine if the signature on the document is hers. Mr. Williams further testified that the signature on the Indemnity Agreement purporting to be Mrs. Williams's does not appear to be hers. The proof offered was insufficient to overcome the statutory presumption and show that there was a genuine issue for trial.

### B.

As noted above, the remaining two issues relate to the monetary judgment. Mr. and Mrs. Williams argue that the trial court erred in awarding Lexon premiums that came due following the breach of the performance agreements. They also assign error to the court's award of attorney's fees.

---

R. App. P. 36(a). But we reach the issue because we must review de novo whether Lexon satisfied the requirements of Rule 56. *See Eadie v. Complete Co.*, 142 S.W.3d at 291; *Blair*, 130 S.W.3d at 763.

The amount of damages is a question of fact. *See Buice v. Scruggs Equip. Co.*, 267 S.W.2d 119, 125 (Tenn. Ct. App. 1953). The selection of the measure of damages is a conclusion of law, which we review de novo. *GSB Contractors, Inc. v. Hess*, 179 S.W.3d 535, 541 (Tenn. Ct. App. 2005).

1. Unpaid Premiums

Mr. and Mrs. Williams contend that premiums that came due after the breach of the performance agreements represent a windfall to Lexon. According to the Williamses, Lexon's liability was fixed upon Windhaven Shores's breach of the performance agreements, "and the bond was useless after that date."

We conclude that the trial court appropriately awarded the unpaid premiums coming due after the breach by Windhaven Shores. Under the Indemnity Agreement, Mr. and Mrs. Williams agreed to pay premiums until Lexon was "discharged and released from any and all liability and responsibility upon and from each such bond or matters arising therefrom, and until the Indemnitors . . . deliver[ed] to [Lexon] . . . competent written evidence satisfactory to [Lexon] of its discharge from all liability on such bond or bonds." The Indemnity Agreement did not limit recovery of premiums to those accruing through the date of any breach. Under the agreement, premiums remained due until Lexon was discharged from all liability under the performance agreements and that only occurred after Lexon reached a final settlement with Metro. The court enforced the agreement as written. "[P]arties are entitled to have their contract enforced according to its express terms." *Wilson Mgmt. Co. v. Star Distribs. Co.*, 745 S.W.2d 870, 873 (Tenn. 1988).

2. Attorney's Fees

Mr. and Mrs. Williams do not dispute that the Indemnity Agreement permits recovery of attorney's fees. Instead, they argue that the trial court erred by not considering whether the attorney's fees Lexon sought "were reasonable, necessary, and in accordance with the local rule and the rules of professional conduct." Before the trial court, Mr. and Mrs. Williams raised the issue of attorney's fees only in their response to Lexon's statement of material facts. They also submitted an affidavit from an attorney who testified that he was "unable to meaningfully review the basis for the amounts requested."

Lexon sought recovery of and the court awarded two types of attorney's fees, which impacts our review of the award. The court awarded attorney's fees that Lexon incurred in prosecuting this action against the indemnitors, and the court awarded attorney's fees that Lexon incurred in defending against and ultimately settling the suit filed by Metro. We address each award separately.

10

a.  Attorney's Fees Incurred in Prosecuting the Action

The Indemnity Agreement authorized recovery of "fees of attorneys . . . in bringing suit to enforce the obligation of any of the Indemnitors under th[e] [Indemnity Agreement]."  Although the word "fees" is not qualified by the word "reasonable," we read that word into the agreement to limit Lexon's recovery to reasonable fees of attorneys.  *See Moore v. Moore*, 603 S.W.2d 736, 739 (Tenn. Ct. App. 1980).  Where a contract permits recovery of reasonable attorney's fees, the burden of proof as to what is a reasonable attorney's fee rests with the party seeking recovery of the fee.  *Wilson Mgmt. Co.*, 745 S.W.2d at 873.  In determining a reasonable fee, the court looks to several factors:

> the time devoted to performing the legal service; the time limitations imposed by the circumstances; the novelty and difficulty of the questions involved and the skill requisite to perform the legal service properly; the fee customarily charged in the locality for similar legal services; the amount involved and the results obtained; and the experience, reputation, and ability of the lawyer performing the legal service.

*Kline v. Eyrich*, 69 S.W.3d 197, 209 n.11 (Tenn. 2002).  Although similar, the court also considers those factors set forth in Rule 1.5 of the Tennessee Rules of Professional Conduct.  *See id.* at 209 & n.11; *see also* Tenn. Sup. Ct. R. 8, RPC 1.5.

Despite the burden of proof and various factors that go into determining a reasonable fee, "a trial judge may fix the fees of lawyers in causes pending or which have been determined by the court, with or without expert testimony of lawyers and with or without a prima facie showing by plaintiffs of what a reasonable fee would be."  *Wilson Mgmt. Co.*, 745 S.W.2d at 873; *see Kahn v. Kahn*, 756 S.W.2d 685, 696-97 (Tenn. 1988) (After hearing a matter, a trial judge may determine that he is sufficiently acquainted with the appropriate factors to award attorney's fees without hearing proof or opinions from other lawyers.).  So "reversal of a fee award is not required merely because the record does not contain proof establishing the reasonableness of the fee."  *Kline*, 69 S.W.3d at 210.

In circumstances in which a court awards attorney's fees under a contract that authorizes recovery of reasonable fees "in the absence of any proof on the issue of reasonableness, it is incumbent upon the [party challenging the fee] to pursue the correction of that error in the trial court by insisting upon a hearing upon that issue."  *Wilson Mgmt. Co.*, 745 S.W.2d at 873.  Mr. and Mrs. Williams did not do that.  Thus, we conclude that they cannot now challenge the court's award of fees incurred in prosecuting this action.  *See* Tenn. R. App. P. 36(a).

11

b. Attorney's Fees Incurred as Damages

The bulk of the attorney's fees awarded were incurred in connection with Lexon's litigation with Metro. The Indemnity Agreement permitted Lexon to recover any "cost" or "expense" that it "may pay or incur in consequence of having executed, or procured the execution of, [the performance agreements] . . . including . . . the expenses of procuring, or attempting to procure, release from liability." Additionally, "the Indemnitors agree[d] to accept the voucher or other evidence of such payment as prima facie evidence of the propriety thereof, and of the Indemnitor's liability therefore to [Lexon]."

Lexon contends that Mr. and Mrs. Williams waived any challenge to the reasonableness of the attorney fees it incurred in connection with the Metro litigation by not properly raising the issue in the trial court. Lexon also contends that the indemnitors' agreement to accept a voucher or similar evidence of payment "as prima facie evidence of the propriety of" the expense contractually eliminated any requirement that it prove the reasonableness of attorney's fees incurred as damages.

Assuming for the sake of argument that Lexon had the burden of proving the reasonableness of the attorney's fees it incurred in connection with the Metro litigation, we agree that Mr. and Mrs. Williams are not entitled to relief on this issue. They never properly alerted the court to the issue in their response to Lexon's motion for summary judgment. *See* Tenn. R. App. P. 36(a). Also the Indemnity Agreement did not require Lexon to supply the indemnitors with itemized billing statements from its attorney in the Metro litigation. Instead the agreement required Lexon to provide a voucher or other evidence of payment of costs and expenses. To the extent that itemized statements were necessary in order to reply to Lexon's motion for summary judgment, it was incumbent upon Mr. and Mrs. Williams to seek additional time "to permit . . . depositions to be taken or discovery to be had" regarding the requested fees. *See* Tenn. R. Civ. P. 56.07.

Finally, we note that the record includes proof on the issue of the reasonableness of the fees incurred in the Metro litigation. In his declaration, Mr. Belinski testified that, as counsel for Lexon, he managed outside counsel on a regular basis and that he was familiar with the rates and billing practices of Tennessee attorneys. He then testified that, "[b]ased on my knowledge and experience[,] it is my opinion that that these fees are reasonable in scope and amount."

**III.**

We conclude that there was no genuine issue as to any material fact and that Lexon Insurance Co. was entitled to a judgment as a matter of law against Mr. and

12

Mrs. Williams.  We also find no error in the trial court's award of damages or attorney's fees.

_____
W. NEAL MCBRAYER, JUDGE