IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
August 6, 2025 Session

## RENEE' NITER-MARTIN A/K/A RENEE' NITER AS NEXT OF KIN OF ROSIE NITER v. METHODIST HEALTHCARE-MEMPHIS HOSPITALS D/B/A METHODIST UNIVERSITY HOSPITAL ET AL.

Appeal from the Circuit Court for Shelby County
No. CT-1706-23     Cedrick D. Wooten, Judge
_____

No. W2024-01193-COA-R3-CV
_____

Appellee filed this action, as next of kin of Decedent, against Appellant nursing facility alleging that Appellant was negligent in its care of Decedent. Appellee also asserted a wrongful death claim. Appellant filed a motion to compel arbitration on its allegation that Decedent signed a binding arbitration agreement before being admitted into its facility. The trial court found that Appellant failed to authenticate the alleged arbitration agreement and concluded that there was no evidence of a binding arbitration agreement between Appellant and Decedent. As such, the trial court denied the motion to compel arbitration. Discerning no error, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court
Affirmed and Remanded**

KENNY ARMSTRONG, J., delivered the opinion of the court, in which JOHN W. MCCLARTY and VALERIE L. SMITH, JJ., joined.

W. Davis Frye and Clay Gunn, Ridgeland, Mississippi, for the appellant, Quince Nursing and Rehabilitation Center, LLC.

Cameron C. Jehl, Carey L. Acerra, Deena K. Arnold, April A. Huntoon, and Davis B. Howard, Memphis, Tennessee, for the appellee, Renee' Niter-Martin.[1]

## OPINION

---

[1] Methodist Healthcare-Memphis Hospitals, and Methodist Le Bonheur Healthcare are not parties to this appeal.

## I. Background

On September 17, 2021, Rosie Niter ("Decedent") was admitted to Appellant Quince Nursing and Rehabilitation Center, LLC ("Quince"). At the time, Decedent allegedly executed various documents as part of her admission paperwork, discussed further *infra*. Decedent resided at Quince until November 2, 2021, when she was discharged to her home. On March 11, 2022, Decedent was again admitted to Quince and resided there until her death.

On May 2, 2023, Appellee Renee' Niter-Martin, Decedent's daughter, alleging that her mother was incapacitated, filed a complaint as her mother's next friend in the Circuit Court of Shelby County ("trial court"). Although the complaint alleged negligence against several defendants, this appeal concerns only Quince. Relevant here, the complaint alleged that Decedent was unable to care for herself during her residency at Quince and that she suffered injuries while admitted there, including pressure sores and poor hygiene, which caused: (1) her health to deteriorate; and (2) unnecessary physical suffering, pain, and mental anguish. On May 8, 2023, six days after Appellee filed the complaint, Decedent died.[2]

On June 29, 2023, Quince filed a motion to compel arbitration and to stay proceedings. Attached as exhibits to the motion were: (1) "Departmental Notes" from the first days of Decedent's admission to Quince; (2) an Admission Agreement; and (3) a Jury Trial Waiver and Arbitration Agreement ("Arbitration Agreement"). Thereafter, the parties engaged in discovery concerning the Arbitration Agreement. On October 5, 2023, Appellee deposed Jonathan Smith, the Admissions Director for Quince at the time Decedent was admitted, and the employee who was allegedly present when Decedent purportedly signed the Arbitration Agreement.

On April 10, 2024, Appellee filed a response in opposition to the motion to compel arbitration. As relevant here, Appellee argued that Quince could not authenticate the Arbitration Agreement. In the absence of such authentication, Appellee argued that Quince could not meet its burden to prove the existence of a valid contract requiring arbitration between Decedent and Quince. Thereafter, the parties filed numerous replies and sur replies, discussed further *infra*.

On April 12, 2024, and May 28, 2024, the trial court heard the motion to compel arbitration. By order of July 17, 2024, the trial court denied the motion on its conclusion that "the existence of an authenticated document evidencing a contract requiring arbitration has not been proven[.]" Quince filed a timely notice of appeal.

---

[2] On February 16, 2024, Appellee filed an amended complaint, adding wrongful death claims.

## II. Issue

The sole issue on appeal is whether the trial court erred in denying the motion to compel arbitration when it concluded that Appellant failed to prove the existence of a valid contract for arbitration.

## III. Standard of Review

Although the trial court denied the motion to compel arbitration, it did so on the basis that there was insufficient evidence to prove that a valid contract for arbitration existed between Quince and Decedent. To the extent our review concerns the denial of the motion to compel arbitration, such review is *de novo* with no presumption of correctness. ***Thornton v. Allenbrooke Nursing & Rehab. Ctr., LLC***, No. W2007-00950-COA-R3-CV, 2008 WL 2687697, at \*4 (Tenn. Ct. App. July 3, 2008); *see also* Tenn. R. App. P. 13(d). Concerning the trial court's ruling regarding the admissibility of evidence, it is reviewed under the abuse of discretion standard. ***Borne v. Celadon Trucking Servs., Inc.***, 532 S.W.3d 274, 294 (Tenn. 2017). "A trial court abuses its discretion only when it 'applies an incorrect legal standard[] or reaches a decision which is against logic or reasoning that causes an injustice to the party complaining.'" ***Eldridge v. Eldridge***, 42 S.W.3d 82, 85 (Tenn. 2001) (quoting ***State v. Shirley***, 6 S.W.3d 243, 247 (Tenn. 1999)). Under the abuse of discretion standard, this Court is not permitted to substitute its judgment for that of the trial court. ***Id.*** (citing ***Myint v. Allstate Ins. Co.***, 970 S.W.2d 920, 927 (Tenn. 1998)).

## IV. Analysis

Quince's motion to compel arbitration was predicated on the Arbitration Agreement, *i.e.,* alleged evidence of a contract to arbitrate, which was attached as an exhibit to the motion. Concerning the admission of written documents as evidence, this Court has explained:

> ***As a general rule, the execution or authenticity of a private writing must be established before it may be admitted in evidence***. This rule has been applied and enforced with respect to writings of every character and description, and a written instrument is admissible only after the signature is proved and identified. 32 C.J.S. *Evidence* § 733 at pp. 1065, 1066, 1067 and authorities cited thereunder.
>
> At common law, as a preliminary to the introduction in evidence of private writings (other than ancient documents) their execution must be proved and their authenticity established. ***A writing standing alone is not evidence; it must be accompanied by competent proof of some sort from which the jury can infer that it is authentic and that it was executed or written by the party by whom it purports to be written or executed***. 29 Am.

- 3 -

Jur.2d *Evidence* § 849 pp. 948, 949.

***Haury & Smith Realty Co. v. Piccadilly Partners I***, 802 S.W.2d 612, 614 (Tenn. Ct. App. 1990) (emphases added). The burden of authentication falls to the party seeking to admit the document into evidence. ***See id.*** at 616; *see also* ***State v. Rimmer***, No. W2017-00504-CCA-R3-DD, 2019 WL 2208471, at *25 (Tenn. Crim. App. May 21, 2019), *aff'd*, 623 S.W.3d 235 (Tenn. 2021) (citing ***State v. Troutman***, 327 S.W.3d 717, 722 (Tenn. Crim. App. 2008)). Under the Tennessee Rules of Evidence, "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to the court to support a finding by the trier of fact that the matter in question is what its proponent claims." Tenn. R. Evid. 901(a).

In response to the motion to compel arbitration, Appellee argued that Quince failed to authenticate the Arbitration Agreement because: (1) in his deposition, Mr. Smith testified that he could not verify that Decedent signed the Arbitration Agreement; and (2) Decedent was deceased and unable to verify that she signed the Arbitration Agreement. Quince filed a reply to Appellee's response. The reply contained no argument; it was comprised only of a copy of Decedent's driver's license and additional admission documents that were purportedly signed by Decedent. In her sur reply, Appellee addressed the admission documents that Quince attached to its reply, arguing that: (1) Decedent's purported signature on the Arbitration Agreement is an incorrect spelling of her name; (2) the purported signature was not witnessed, notarized, or otherwise attested to in any way and could not be self-authenticating; and (3) there was no date entered next to Decedent's purported signature. In its reply, Quince, relying on ***Lexon Insurance Company v. Windhaven Shores, Inc.***, 601 S.W.3d 332 (Tenn. Ct. App. 2019), discussed further *infra*, argued that it could be reasonably inferred, based on Mr. Smith's position as the Admissions Director and from other facts contained in his affidavit, that he witnessed Decedent sign the Arbitration Agreement. Mr. Smith's affidavit, which was executed more than seven months after his deposition and one week before the second hearing on the motion to compel, was attached as an exhibit to Quince's reply. In response, Appellee filed a sur reply and motion to strike Mr. Smith's affidavit.

In its oral ruling, which was incorporated into its written order denying the motion to compel arbitration, the trial court found:

So [Quince] cited a case, and I went to the case that was cited in the brief, ***Haury & Smith Realty Company versus Piccadilly Partners I*** []. It said authentication . . . of a private writing must be established before it may be admitted in evidence. Authentication is satisfied by evidence sufficient to support a finding by the trier of fact that the matter in question is what its proponent claims. The signed writings, this would include proof of signing by the party to the writing. A writing—this is ***Haury & Smith Realty*** . . . A writing standing alone is not evidence. It must be accompanied by competent

- 4 -

proof of some sort from which the trier of fact can infer that it is authentic and that it was executed or written by a party by whom it purports to be written or executed. Now, I've got a document that does not have a date. I've got a document that includes a printed name that Mr. Smith admits that he wrote. And then we've got a signature in which — doesn't look like it's spelled correctly, based on the four corners of the document, and Mr. Smith's testimony that Mr. Smith does not remember this interaction. Yet, he submits an affidavit to support that this is — this event occurred. And by your own admission, Counsel [for Quince], you have stated that he doesn't remember. So he can't authenticate that that signature is [Decedent's].

For the reasons discussed below, the record supports the trial court's conclusion.

In the trial court and on appeal, Quince relies on **Lexon** to support its argument that Mr. Smith's affidavit testimony authenticated the Arbitration Agreement. Relevant here, the issue in **Lexon** was whether an indemnity agreement had been properly authenticated such that it could be admitted as evidence for the purposes of summary judgment. **Lexon Ins. Co.**, 601 S.W.3d at 339-40. Two of the indemnitors to the agreement questioned whether the signatures appearing on the agreement were theirs. **Id.** at 336-37. Concerning the authenticity of a private writing, the **Lexon** Court cited both **Haury** and Tennessee Rule of Evidence 901(a), discussed *supra*. **Id.** at 340. In **Lexon**, we determined that the trial court did not abuse its discretion in finding that the indemnity agreement was admissible. Our conclusion was based on the fact that the agreement had been authenticated by the declaration of Lexon's attorney and employee, Michael Belinski. **Id.** In his declaration, Mr. Belinski testified, *on personal knowledge*, that the indemnitors executed the indemnity agreement. **Id.** Specifically, the declaration stated that the "defendants signed" the document. **Id.** On these facts, we concluded that "[t]he declaration was sufficient for the [trial] court to infer that the [i]ndemnity [a]greement was authentic and that it was in fact signed by [the indemnitors]." **Id.** We explained that "[t]he 'testimony of a witness who saw the alleged signor sign the writing' is one method to prove that a signature on a document was made by the person who purportedly signed it." **Id.** (citing 32A C.J.S. *Evidence* § 1091). The **Lexon** Court then addressed the indemnitors' appellate argument that Mr. Belinski's declaration lacked details concerning how he came to witness the execution of the indemnity agreement. **Id.** Acknowledging the scant details of Mr. Belinski's declaration, we nevertheless concluded

that the declaration affirmatively shows Mr. Belinski's competence to testify to the execution of the [i]ndemnity [a]greement. *See* Tenn. R. Civ. P. 56.06. An explanation of the basis of one's personal knowledge is not necessary if "personal knowledge can be reasonably inferred based on the affiant's position and other facts contained in the affidavit." **Wells Fargo Bank v. Hammond**, 22 N.E.3d 1140, 1147 (Ohio Ct. App. 2014). We can make such an inference here.

- 5 -

***Lexon Ins. Co.***, 601 S.W.3d at 340-41.

Quince rests its argument on our above conclusion in ***Lexon***.  Specifically, it argues that this Court should infer Mr. Smith's personal knowledge of the execution of the Arbitration Agreement based on his position as the Admissions Director and from other facts contained in his affidavit.[3]  In making this argument, Quince ignores the first part of the sentence on which it relies: "An explanation *of the basis of one's personal knowledge is not necessary . . . .*" ***Id.*** at 341 (internal citation omitted) (emphasis added).  In so doing, Quince misapplies ***Lexon.***  In ***Lexon***, Mr. Belinski's declaration was based *on his personal knowledge* that the indemnitors signed the indemnity agreement.  ***Id.*** at 340.[4]  Because Mr. Belinski possessed personal knowledge of the execution of the indemnity agreement, it was unnecessary for the indemnitee to explain the basis of such knowledge because it could be reasonably inferred from Mr. Belinski's position as an attorney for the company and other facts in his declaration.  The opposite is true here where Mr. Smith did *not* have the requisite personal knowledge concerning the execution of the Arbitration Agreement.  Turning to his deposition testimony, Mr. Smith was asked whether he remembered "a resident at Quince in September of 2021, named Rosie Niter"; Mr. Smith answered, "No."  When asked whether he recalled "the admissions meeting or process that would [have] been undertaken with respect to [Decedent] in September of 2021," Mr. Smith answered: "I don't recall the specific paperwork, but I mean, the process was the same on most any patient."  Mr. Smith further testified that he could not recall whether he met Decedent at the hospital or at the facility, nor could he recall the amount of time he spent in the admissions meeting with her.  Indeed, Mr. Smith admitted that, *because he had no specific memory of Decedent or of meeting her*, he could not say for certain whether the signatures on the admission documents, including the Arbitration Agreement, belonged to her.  At oral argument before the trial court, counsel for Quince conceded that Mr. Smith "does not remember the event, [h]e does not remember the signature.  So[,] he cannot testify that this is, in fact, [Decedent's] signature.  He does not have that memory."  At oral argument

---

[3] The other facts in Mr. Smith's affidavit testimony include that: (1) the standard admissions process was followed with Decedent; (2) there was no set of circumstances in which Mr. Smith would sign and date an agreement on a different date than the resident signed the agreement; (3) although he had no specific memory of his interactions with Decedent, "to the best of [his] knowledge and belief, [Decedent] herself executed the Arbitration Agreement"; and (4) Mr. Smith would not have signed a document as a witness for the facility if he did not witness the resident sign the document herself.

[4] At oral argument, counsel for Quince represented to this Court that, in ***Lexon***, "there was a [declaration] from the indemnitee's company, it was [a declaration] from an employee who was not . . . at the signing of the document, but the [declaration] of the employee said, 'well, I wasn't there, this was the type of document we use in those circumstances.'"  Respectfully, the "facts" cited by Quince do not appear in the ***Lexon*** opinion, which may explain why there is no citation to these "facts" in Quince's appellate briefing.  *See* Tenn. R. App. P. 27(a)(7)(A) (requiring an appellant's brief to include an argument, setting forth "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, ***with citations to the authorities*** and appropriate references to the record (which may be quoted verbatim)[.]") (emphasis added).

before this Court, Quince's counsel stated: "We have always taken the position that Mr. Smith just doesn't remember this event." In short, the **Lexon** case is distinguishable. Unlike Mr. Belinski, Mr. Smith did not and could not testify, *on personal knowledge*, that Decedent signed the Arbitration Agreement because he did not remember the event. *See id.* Rather, any testimony from Mr. Smith was based on his recollection of the procedures followed at Quince during his tenure there. As such, Quince failed to present the testimony of a witness who could verify that Decedent signed the Arbitration Agreement. **Id.** (citing 32A C.J.S. *Evidence* § 1091).

We recall that our standard of review on appeal concerning a trial court's ruling on the admissibility of evidence is abuse of discretion. **Borne**, 532 S.W.3d at 294. Under this standard, we cannot substitute our judgment for that of the trial court, and we may reverse the trial court only on our conclusion that it has applied an incorrect legal standard or reached a decision against logic or reasoning that causes an injustice to the complaining party. **Eldridge**, 42 S.W.3d at 85. In **Lexon**, this Court reviewed whether the trial court erred in *admitting* the indemnity agreement into evidence. To that end, this Court determined that the trial court did not abuse its discretion when it determined that Mr. Belinski's declaration authenticated the indemnity agreement. Indeed, as discussed above, Mr. Belinski's declaration affirmatively stated that he had personal knowledge that the indemnitors executed the agreement. Conversely, here, we review whether the trial court erred when it *denied* admitting the Arbitration Agreement into evidence. In doing so, we must determine whether the trial court applied an incorrect legal standard or reached a decision against logic or reasoning. For the many reasons discussed above, we conclude that it did not. Indeed, the only "witness" on which Quince relies to prove that Decedent signed the Arbitration Agreement is Mr. Smith, who admitted that he had no memory of Decedent signing it. Accordingly, we conclude that the trial court did not abuse its discretion when it denied admitting the Arbitration Agreement as evidence to support the motion to compel arbitration.

The trial court denied Quince's motion to compel arbitration on its conclusion that Quince failed to present evidence of a valid agreement to arbitrate. We review the trial court's denial of the motion to compel arbitration *de novo* with no presumption of correctness. **Thornton**, 2008 WL 2687697, at *4; *see also* Tenn. R. App. P. 13(d). As the party seeking to compel arbitration, Quince bore the burden of establishing the existence of a valid agreement to arbitrate and was required to present evidence of such agreement. **Webb v. First Tennessee Brokerage, Inc.**, No. E2012-00934-COA-R3-CV, 2013 WL 3941782, at *19 (Tenn. Ct. App. June 18, 2013) (concluding that the defendant failed to carry its burden to prove that the plaintiff agreed to arbitrate); **Randolph v. Randolph**, 937 S.W.2d 815, 821 (Tenn. 1996) ("Ordinarily, the burden of providing the existence of a valid contract is upon the person relying on the contract."); *see also* **Denton v. Allenbrooke Nursing & Rehab. Ctr., LLC**, 495 F. Supp. 3d 601, 610 (W.D. Tenn. 2020) (quoting **Hammond v. Floor & Decor Outlets of Am., Inc.**, No. 3:19-cv-01099, 2020 WL 2473717, at *3 (M.D. Tenn. May 13, 2020)) ("The movant in a motion to compel arbitration 'bears

the ultimate burden of establishing the existence of a valid agreement to arbitrate.'"); ***Foust v. Comcast Corp.***, No. 3:19-CV-173-HSM-DCP, 2020 WL 1891755, at \*4 (E.D. Tenn. Jan. 28, 2020)).  As discussed above, because Quince failed to authenticate the Arbitration Agreement, the trial court correctly denied admitting it into evidence in support of the motion to compel arbitration.  Without any evidence of an agreement between Quince and Decedent to arbitrate, the trial court was correct to deny the motion to compel arbitration.[5]

### V. Conclusion

For the foregoing reasons, we affirm the trial court's order denying the motion to compel arbitration.  The case is remanded for such further proceedings as may be necessary and are consistent with this opinion.  Costs of the appeal are assessed against the Appellant, Quince Nursing and Rehabilitation Center, LLC.  Execution for costs may issue if necessary.

s/ Kenny Armstrong
KENNY ARMSTRONG, JUDGE

---

[5] We note that, at oral argument before this Court, counsel for Quince used most of his allotted time discussing Appellee's alleged failure to prove that Decedent's signature on the Arbitration Agreement was a forgery.  Quince appears to have briefly raised this argument in the trial court, and it is briefly mentioned in Quince's initial brief to this Court.  We need not address this argument because any discussion concerning whether Decedent's signature was a forgery would only be considered once there was evidence of an *authenticated agreement*.  Because the trial court correctly determined that Quince failed to meet its initial burden to authenticate the Arbitration Agreement, any argument concerning a forged signature is pretermitted.